The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Armead Michael SMITH, Defendant–
Appellant.

No. 94CA1957.

Colorado Court of Appeals,
Div. I.

Sept. 26, 1996.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Jacque Lyn Russell, Assistant Attorney General, Denver, for Plaintiff–Appellee.

Dyer & Dilts, P.C., Timothy J. Tuthill, Cortez, for Defendant–Appellant.

Opinion by Judge METZGER.

Defendant, Armead Michael Smith, appeals the judgment of conviction entered on a jury verdict finding him guilty of possession of cocaine, a schedule II controlled substance. We affirm.

Near 10:30 p.m. on May 6, 1993, an Arvada police officer responded to a complaint that an unknown person had been knocking on the back door of a house. He found no one there, but upon patrolling the surrounding neighborhood, the officer saw defendant and another man. Defendant was sitting in a pickup truck with its lights off parked in the driveway, while the other man stood "pounding" at the front door of an unlighted house.

The officer approached defendant and his companion, asked them what they were do-

ing, and requested identification. The two men responded that they were trying to contact a friend who lived at that address. A warrant check by the officer revealed that defendant was the subject of an arrest warrant for failure to appear in a civil case in Adams County. The officer then arrested defendant and took him to the police station for booking.

After arriving at the police station, defendant was searched, and the contents of his pockets were removed. During this process, defendant tried to conceal a small plastic container and surreptitiously to pour its contents onto the floor. The officer asked defendant what he was doing and defendant replied that he was checking to see if there was marihuana in the container. The officer saw "small chunks of a whitish grayish substance" on the floor and retrieved as much of it as possible, placing it back in the container. The substance tested positive for cocaine.

## I.

Defendant first contends that the trial court erred in denying his motions to suppress evidence. He argues that the investigatory stop and the inventory search that followed his arrest violated his rights to be free from unreasonable searches and seizures. We disagree.

## A.

Defendant asserts that the investigatory stop violated his rights. We are not persuaded.

A police officer, lacking probable cause to arrest, may stop a suspect for investigatory purposes if the officer has a reasonable suspicion that the person has committed or is about to commit a crime. *People v. Sosbe,* 789 P.2d 1113 (Colo.1990); *see also Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971).

■ An investigatory stop is proper under the Fourth Amendment if three conditions are met. First, the officer must have reasonable suspicion that criminal activity has occurred, is taking place, or is about to take place. Second, the purpose of the intrusion must be reasonable. Finally, the scope and character of the intrusion must be rea-

sonably related to its purpose. *People v. Garcia,* 789 P.2d 190 (Colo.1990). The totality of the circumstances must be considered in determining whether a stop was valid. *People v. Sutherland,* 886 P.2d 681 (Colo. 1994); *see also People v. Garcia, supra.*

■ A reviewing court must perform *de novo* review of a trial court's determination that reasonable suspicion supported an investigatory stop. In so doing, a reviewing court must take care to review findings of historical fact for clear error and, at the same time, to give due weight to inferences drawn from such facts by the trial court and by the local police. *Ornelas v. United States,* —— U.S. ——, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); *see also Hampe v. Tipton,* 899 P.2d 325 (Colo.App.1995).

Here, at the suppression hearing, the trial court found that the facts surrounding the stop are essentially as we have set forth above, and those findings have support in the record.

■ We agree with the trial court that the stop was supported by reasonable suspicion of criminal activity. As the trial court noted:

The information that [the officer] had before him was as follows: Fairly late at night someone in this neighborhood was knocking on doors of strangers and causing at least one homeowner to be concerned. The person who had gone up to the door from the pickup truck was knocking on a darkened door very late at night. That is suspicious conduct which is consistent with casing a place for the possibility of burglary or other kinds of criminal activity.

■ Moreover, while the conduct of defendant and his companion was also consistent with innocent activity, the officer was not required to eliminate possible non-criminal explanations for the conduct before he intervened. *See United States v. Welker,* 689 F.2d 167 (10th Cir.1982).

Second, as the trial court found, the purpose of the intrusion was reasonable. The officer testified that he had approached defendant and the other man because "[t]hey could possibly have been the same person or

persons that were involved in the prowler call pounding on the first person's door." The initial incident had occurred only a few minutes earlier, and no more than 300 feet away from the officer's sighting of defendant and the other man. Given the late hour, the close temporal and geographical proximity, and the factual similarities between the two incidents, the officer's purpose in questioning defendant and his companion was reasonable. *See Coleman v. United States,* 337 A.2d 767 (D.C.App.1975)(police officer was justified in stopping defendant and a companion after he saw them knocking on a front door of a house in a high-burglary neighborhood at 10:00 p.m.).

Finally, we also agree with the trial court that the nature and scope of the intrusion were reasonably related to the officer's purpose in questioning the defendant and his companion.

■ As part of an investigatory stop, based on reasonable suspicion of criminal activity, an officer may take steps to ascertain the detainee's identity. *Stone v. People, supra;* § 16–3–103(1), C.R.S. (1986 Repl.Vol. 8A).

■ When verifying the identity of a detainee pursuant to an investigatory stop, an officer may check for outstanding warrants, so long as this procedure does not unreasonably extend the duration of the detention. *See People v. Cobb,* 690 P.2d 848 (Colo.1984); *see also State v. Ybarra,* 156 Ariz. 275, 751 P.2d 591 (Ariz.App.1987); *People v. Castaneda,* 35 Cal.App.4th, 1222, 42 Cal.Rptr.2d 18 (1995); *Petty v. State,* 696 S.W.2d 635 (Tex. App.1985); *State v. Higgins,* 884 P.2d 1242 (Utah 1994); *State v. Rife,* 81 Wash.App. 258, 913 P.2d 850 (1996); *see generally Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981)(fn.12).

Here, the trial court determined that the detention was reasonable in terms of its intensity and its duration. That conclusion is fully supported by the record. Indeed, the officer's uncontradicted testimony shows that the warrant check lasted only a few minutes. Thus, we agree with the trial court that the nature and scope of the detention were reasonable in light of the purpose for the stop. *See People v. Cobb, supra.*

*People v. Redinger,* 906 P.2d 81 (Colo.1995) and *People v. Rodriguez,* 924 P.2d 1100 (Colo.App.1996) do not require a contrary result.

Both *Redinger* and *Rodriguez* involved situations in which an officer's initial reasonable suspicions were assuaged almost immediately after the commencement of an investigatory stop. Nevertheless, in each case, the officer continued to detain the defendant and to make further inquiries.

Here, unlike in *Redinger* and *Rodriguez,* the record shows that the purpose of the stop had not been satisfied before the officer asked defendant and his companion for identification and checked with the dispatcher to determine the existence of outstanding warrants. In this case, the explanations offered by defendant and his companion were not readily susceptible to quick empirical verification, as would be an observation that a detainee's car had a valid license plate, *see, e.g., People v. Redinger, supra,* or that a detainee was not driving under the influence. *See, e.g., People v. Rodriguez, supra.*

Therefore, we hold that the investigatory stop in this case was proper.

### B.

■ Defendant next argues that, because he was arrested pursuant to a warrant issued in a civil case and because he possessed sufficient cash at the time of his arrest to post his bond, it was unreasonable to subject him to the booking process. Therefore, he contends, the removal and inventory of the contents of his pockets violated his rights. We disagree.

An arrest warrant is an order from a court "directed to any peace officer commanding the arrest of the person named or described in the order." Section 16–1–104(18), C.R.S. (1986 Repl.Vol. 8A). Such an order may be issued in the context of a civil proceeding. *See* C.R.C.P. 107(c).

■ After a suspect is arrested and taken to the police station, "it is entirely proper for police to remove and list or inventory proper-

ty found on the person or in the possession of an arrested person who is to be jailed." *Illinois v. Lafayette,* 462 U.S. 640, 646, 103 S.Ct. 2605, 2609, 77 L.Ed.2d 65, 71 (1983); *see also Colorado v. Bertine,* 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987); *People v. Inman,* 765 P.2d 577 (Colo.1988); *People v. Glaubman,* 175 Colo. 41, 485 P.2d 711 (1971).

Here, defendant was lawfully arrested pursuant to a valid arrest warrant. He was then taken to the police station and underwent standard booking procedures. The fact that the arrest warrant was issued in the context of a civil case is of no relevance in determining the validity of the inventory search.

Thus, defendant's reliance on *People v. Dandrea,* 736 P.2d 1211 (Colo.1987) is inapposite. In that case, the court held that a person placed in civil protective custody under the Colorado Alcoholism and Intoxication Treatment Act, § 25–1–301, et seq., C.R.S. (1989 Repl.Vol. 11A), has not been arrested; therefore, a "post-arrest inventory search" was improper. Here, in contrast, there is no question that defendant was under arrest.

■ Moreover, even in the *Dandrea* type of protective custody, "searches of a civil detainee's pockets are permissible as part of an inventory search conducted in the course of the detention process provided for in [§ 25–1–301, et seq.] for purposes of ensuring the security of the detainee's possessions and ensuring the safety of both the detainee and those with whom he or she has contact during custody." *People v. Carper,* 876 P.2d 582, 585 (Colo.1994); *see also People v. Glaubman, supra.*

The inventory search here was brief and not intrusive. It was fully warranted and the trial court correctly refused to suppress the cocaine obtained as a result.

## II.

Defendant next contends that the trial court erred in refusing to suppress certain statements he made after his arrest. We disagree.

Statements made by a defendant during a custodial police interrogation are inadmissible as evidence in a criminal case unless the defendant was advised of certain constitu-

tional rights and waived those rights. *People v. Breidenbach,* 875 P.2d 879 (Colo.1994); *see also Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). For *Miranda* to be applicable, two requirements must be met: (1) the person making the statement must be in "custody"; and (2) the statement must be the product of police interrogation. *People v. Haurey,* 859 P.2d 889 (Colo.1993).

## A.

Defendant first challenges the trial court's refusal to suppress a statement he made in response to an inquiry by the arresting officer who had observed him attempting to empty the contents of the small container. However, no evidence was presented at trial regarding defendant's response to the officer's question. Indeed, the only reference to defendant's statement was made by defense counsel during his opening statement, over the prosecutor's objection.

## B.

■ Defendant next challenges the trial court's refusal to suppress statements he made in a telephone conversation with a police investigator the day after defendant's release from jail. We disagree.

A telephone call does not constitute custodial interrogation. *People in Interest of J.C.,* 844 P.2d 1185 (Colo.1993). Hence, contrary to defendant's argument, because he was not in custody at the time of the conversation, no *Miranda* warnings were necessary and suppression of the statements was properly denied. *See People v. Corley,* 698 P.2d 1336 (Colo.1985); *People v. Brewer,* 720 P.2d 583 (Colo.App.1985).

## III.

Defendant also contends that the trial court erred in refusing to suppress the cocaine obtained from the small container. We disagree.

■ A criminal defendant is entitled to have sanctions imposed against the prosecution if his or her due process rights have

been violated by the prosecution's failure to preserve material evidence. *People v. Enriquez,* 763 P.2d 1033 (Colo.1988).

In this context, evidence is material if: (1) it has an exculpatory value that was apparent before the evidence was lost or destroyed; and (2) the defendant would be unable to obtain comparable evidence through other available means. *People v. Greathouse,* 742 P.2d 334 (Colo.1987).

■ Unless the defendant can show bad faith on the part of the police, failure to preserve useful evidence does not constitute a denial of due process. *People v. Wyman,* 788 P.2d 1278 (Colo.1990); *see also Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988).

■ Here, after finding the grey and white granular material on the floor, the officer scooped the material into the container he had seen defendant holding. Defendant asserts that, in so doing, the officer contaminated the container with the cocaine, and thus, in effect destroyed any exculpatory value the container may have had. We are not persuaded.

First, defendant concedes that there is no evidence of bad faith by the officer. Instead, he relies on language in Justice Stevens' concurring opinion in *Arizona v. Youngblood, supra,* to argue that a showing of bad faith is unnecessary in demonstrating that the failure to preserve evidence requires the imposition of sanctions. However, this view was not reflected in the majority opinion in *Youngblood,* and does not guide our disposition here.

Second, defendant has failed to present any cogent argument regarding the possible exculpatory value of the container. The only evidence in the record regarding the contents of the container was the officer's testimony that he observed defendant pouring the grey and white material out of it and that he later saw grey and white powder residue inside the empty container. Thus, the trial court was correct in refusing to suppress this evidence. *See People v. Perryman,* 859 P.2d 263 (Colo.App.1993).

IV.

■ Finally, defendant argues that the evidence was insufficient to show that he knowingly possessed cocaine. We disagree.

When the sufficiency of the evidence is challenged on appeal, our task is to determine whether the evidence, viewed as a whole, and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crimes charged beyond a reasonable doubt. *Kogan v. People,* 756 P.2d 945 (Colo.1988).

Here, the evidence relative to the discovery of the cocaine during the inventory search, together with defendant's attempt to discard the cocaine and his incriminating statements during his telephone conversation with the police investigator, is sufficient to support defendant's conviction for possession of cocaine. *See Kogan v. People, supra.*

The judgment is affirmed.

CRISWELL and JONES, JJ., concur.