The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Stephen A. McKAY, Defendant–Appellant.

No. 99 CA 0830.

Colorado Court of Appeals, Div. III.

July 6, 2000.

Rehearing Denied Aug. 10, 2000.

Ken Salazar, Attorney General, Kathleen M. Byrne, Special Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Carl E. Stahl, Aurora, Colorado, for Defendant–Appellant.

Opinion by Judge DAVIDSON.

Defendant, Stephen A. McKay, appeals from the judgment of conviction entered upon a jury verdict finding him guilty of driving after revocation prohibited. We affirm.

A Lakewood Police Department vice detective was informed by another police officer that a "known prostitute" appeared to be soliciting along Colfax Avenue. Proceeding to the scene, the detective saw the prostitute get into the passenger side of defendant's pickup truck. The detective knew, based on her past experience, that this prostitute solicited male customers by hitching a ride on this stretch of Colfax Avenue.

The detective followed defendant and the woman as they drove away but lost sight of the truck. She immediately began searching for them and drove to a nearby parking garage which she knew was a location where prostitutes and their customers often engaged in sex. The garage was in Denver County, an area outside the jurisdictional authority of the Lakewood Police Department.

The detective discovered the truck parked on the top level of the garage (the detective testified that she passed numerous unoccupied parking spots when ascending the structure to the level where the truck was parked). Defendant was sitting in the driver's seat. As the detective approached the truck, the prostitute "sat up."

The detective contacted defendant, initiated a conversation concerning the possible act of prostitution, and asked for identification. Defendant provided the detective with identification and admitted that his driver's license had been revoked as an habitual traffic offender. The detective verified this information and charged defendant with driving after revocation prohibited.

### A.

Defendant contends the trial court erred in denying his motion to suppress all evidence obtained by the detective in Denver County. Specifically, he contends the detective lacked statutory authority to pursue him into Denver County because, at the time she left Jefferson County, she lacked "reasonable grounds" to believe that he or his passenger had committed a crime. In a related claim, defendant asserts he was subject to an unconstitutional investigative detention in the parking garage because the detective did not have reasonable suspicion to believe he was engaged in criminal activity. Although we agree that the detective lacked statutory authority to pursue and arrest defendant outside Jefferson County for an offense occurring in Jefferson County, we conclude there was no constitutional violation requiring suppression of evidence.

### B.

■ A police officer is authorized to make an arrest outside of his or her jurisdiction in limited circumstances. As pertinent here, those circumstances include when an officer is in fresh pursuit of an alleged offender and "the officer has reasonable grounds to believe that the alleged offender has committed a criminal offense...." Section 16–3–106, C.R.S.1999.

Initially, we note that, in their briefs, both defendant and the People seem to assume that the "reasonable grounds" standard of § 16–3–106 is the same as the "reasonable suspicion" standard governing investigative detentions. However, depending on the context in which it is used, the term "reasonable grounds" has been variously equated with both the "probable cause" and "reasonable suspicion" standards. *See People v. Tafoya,* 985 P.2d 26 (Colo.App.1999).

■ The General Assembly's intended meaning of a doubtful word or phrase may be ascertained by consideration of the language in the context of the statute and by reference to the meaning of words associated with the word or phrase at issue. *Fogg v. Macaluso,* 892 P.2d 271 (Colo.1995).

■ The provisions of § 16–3–106 dealing with situations involving arrest warrants and observed crimes together suggest that the statute is intended to authorize extra-territorial arrests, not extra-territorial investigations. We, therefore, interpret the accompanying "reasonable grounds" provision of that same section to mean that a police officer in fresh pursuit can only make an extra-territorial warrantless arrest if, at the time the pursued party crosses the territorial boundary, the officer has "probable cause" to believe a crime has been committed. *See People v. Hamilton,* 666 P.2d 152 (Colo.1983)(construing the territorial limitations of § 16–3–106 as applicable to § 16–3–102, C.R.S.1999, which authorizes officers to make arrests upon "probable cause").

■ Probable cause to arrest exists when, under the totality of the circumstances, the objective facts and circumstances warrant the belief by a reasonable and prudent person, in light of that person's training and experience, that an offense has been committed and that the defendant committed it. *People v. McCoy,* 870 P.2d 1231 (Colo.1994).

■ Here, when defendant left Jefferson County, the detective had observed him give a ride to a "known prostitute" with a history of soliciting in that particular location. Without more, these observations do not amount to probable cause. *See People v. Ratcliff,* 778 P.2d 1371 (Colo.1989) (where

detective observed defendant, previously unknown to him, and another person, a known drug dealer, engage in a brief exchange outside a bar in a known drug trafficking area, but did not see any object actually transferred, the detective lacked probable cause to arrest). Therefore, § 16–3–106 did not authorize the detective to pursue defendant into Denver County.

However, this conclusion does not end our inquiry. A violation of § 16–3–106 does not mandate suppression of evidence unless the violation is willful or the resulting arrest violates constitutional constraints on unreasonable searches and seizures. *People v. Vigil*, 729 P.2d 360 (Colo.1986).

In this case the trial court did not find, and the record does not indicate, that the detective willfully violated the provisions of § 16–3–106. Moreover, the detective's pursuit of defendant was not, in and of itself, a "seizure" for constitutional purposes. *People v. Archuleta*, 980 P.2d 509 (Colo.1999) (a chase is not a seizure). Accordingly, we turn to the determinative question of whether the detective's contact with defendant in the parking garage constituted an unconstitutional seizure.

## C.

An investigatory stop is proper under the Fourth Amendment if three conditions are met. First, the officer must have reasonable suspicion that criminal activity has occurred, is taking place, or is about to take place. Second, the purpose of the intrusion must be reasonable. Finally, the scope and character of the intrusion must be reasonably related to its purpose. The totality of the circumstances must be considered in determining whether a stop was valid. *People v. Smith*, 926 P.2d 186 (Colo.App.1996).

On appeal, the trial court's findings of fact are reviewed for clear error, but its determination whether reasonable suspicion existed based on those facts is reviewed de novo. *People v. Smith, supra.*

Based on the record evidence set forth above, we agree with the trial court that, by the time the detective made contact with defendant in the parking garage, she had observed sufficient facts to give rise to a reasonable suspicion that defendant was engaged in criminal activity with a prostitute. *See State v. Holmes*, 774 P.2d 506 (Utah App.1989) (experienced vice officer had reasonable suspicion justifying an investigative stop after he observed the female defendant strolling along a street known for prostitution activity, saw her converse with the male drivers of two vehicles, and then watched her enter the vehicle of a third man who proceeded to drive in a "somewhat evasive" manner).

We further conclude the detective's request for defendant's identification information was reasonably related in scope and character to the investigative detention. *People v. Rodriguez*, 945 P.2d 1351 (Colo. 1997) (request for identification reasonably related to traffic stop). Contrary to defendant's suggestion, it is irrelevant to this issue that the trial court suppressed his self-incriminatory statements regarding the status of his driver's license, finding that those statements were coerced by a promise of leniency made during a custodial interrogation conducted without a *Miranda* warning.

The judgment is affirmed.

Chief Judge HUME and Judge ROY concur.