The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

**Maurice Derrill RAY, Defendant– Appellant.**

No. 03CA0963.

Colorado Court of Appeals, Div. IV.

Sept. 23, 2004.

Certiorari Denied April 11, 2005.*

---

** Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51–1105, C.R.S.2003.

* Chief Justice MULLARKEY and Justice HOBBS would grant to the following:

Whether the court of appeals erred in applying section 18-1-202 C.R.S. (2004) to determine that venue was proper.
Whether the court of appeals properly found that the police violated section 16-3-106 C.R.S. (2004)

in light of *People v. Wolf*, 635 P.2d 213 (Colo. 1981).

Ken Salazar, Attorney General, Matthew D. Grove, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Jonathan D. Reppucci, LLC., Jonathan D. Reppucci, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge LOEB.

Defendant, Maurice Derrill Ray, appeals the judgment of conviction entered on a jury verdict finding him guilty of distribution of a schedule II controlled substance. We affirm.

The facts in this case are largely undisputed. A detective from the Denver Police Department Narcotics Bureau was working undercover as part of a sting operation on the East Colfax corridor. The detective and other Denver police officers were targeting the area of East Colfax and Yosemite, a border between the City and County of Denver and Adams County.

While driving eastbound on Colfax in the City and County of Denver, the detective, who was monitored by fellow officers via audio equipment, observed a man (codefendant), who he suspected was a drug dealer, walking along the sidewalk in Denver. The detective made visual contact with codefendant and yelled "sixty," which is a street term for $60 worth of crack cocaine. Codefendant then motioned for the detective to turn left onto the east side of Yosemite and pull over, which put the detective in Adams County.

Codefendant approached the detective and informed him that he only had "a twenty," that is, $20 worth of cocaine, but that he could get the rest. Codefendant then got into the detective's car and used the detective's phone to call defendant. He asked defendant if he was "up." After receiving an affirmative response, codefendant told the detective to drive to the 1500 block of Beeler Street, also in Adams County, to meet his "guy."

Upon reaching the designated location, codefendant got out of the car and met defendant. Codefendant returned to the car and handed three bags of crack cocaine to the detective, who then gave him three marked $20 bills. The detective watched codefendant walk over to defendant and hand him the bills. The detective then gave an arrest signal to the officers monitoring the activity. Defendant fled, but was soon arrested on Beeler Street, in Adams County. Upon searching him, the officers found $1,140 in cash as well as two of the marked $20 bills. The officers brought defendant to Denver, where he was booked and jailed. Codefendant was also arrested in connection with the drug transaction. Defendant was charged and convicted by a jury of one count of possession of a controlled substance and one count of distribution of a controlled substance.

Prior to trial, defendant filed a motion to dismiss based on improper venue and a motion to suppress based on his extraterritorial arrest in Adams County. The trial court denied both motions, concluding that the venue was proper in Denver pursuant to § 18–1–202(9), C.R.S.2003, and that suppression was not warranted because defendant's extraterritorial arrest was not the result of "willful" conduct on the part of the Denver police.

## I. Venue

Defendant contends the trial court erred in denying his motion to dismiss challenging venue in Denver District Court. We disagree.

■ We first address the parties' respective contentions concerning the applicable standard of review on this issue. Defendant contends that we should apply an abuse of discretion standard. The People contend that the issue is a mixed question of fact and law and that the trial court's findings of fact, which are based on essentially undisputed facts, are entitled to deference and the court's legal conclusion that Denver was an

appropriate venue is subject to de novo review. We agree with the People.

A motion for change of venue under § 16-6-102, C.R.S.2003, is committed to the sound discretion of the trial court, and absent a clear abuse of that discretion, its decision will not be disturbed. *People v. Coit,* 961 P.2d 524, 526 (Colo.App.1997). However, where, as here, the trial court denies a motion to dismiss asserting that original venue in a specific county was improper under § 18-1-202, C.R.S.2003, the court's legal conclusion that the county was an appropriate venue is subject to de novo review. *See People v. Matheny,* 46 P.3d 453 (Colo.2002)(findings of fact are subject to deference if supported by competent evidence in the record, but conclusions of law are reviewed de novo).

Section 18-1-202 provides in pertinent part:

(1) Except as otherwise provided by law, criminal actions shall be tried in the county where the offense was committed, or in any other county where an act in furtherance of the offense occurred.

. . . .

(9) When a person in one county solicits, abets, agrees, aids, or attempts to aid another in the planning or commission of an offense in another county, the offense is committed and the offender may be tried for the offense in either county, or in any other county in which the principal offense could be tried.

■ Defendant argues that venue was not proper in Denver because he did not commit any offense or act in furtherance of the offense in Denver, as required by § 18-1-202(1). We disagree and conclude that, based on the undisputed facts, venue was proper in Denver under § 18-1-202(9).

Here, the record supports the trial court's finding that "This drug transaction began, although it began ever so slightly, it still began in Denver. It continued in Adams County." Codefendant's act of motioning the detective to pull over after the detective yelled "sixty" occurred in Denver. Codefendant knew that he did not have $60 worth of cocaine to sell, and he then called defendant to involve him in the transaction. The trial court properly inferred that defendant and codefendant were acting in concert and that codefendant's act of motioning the detective to pull over aided and abetted defendant's offense of distributing a controlled substance. Accordingly, under § 18-1-202(9), venue would have been proper in either Denver or Adams County.

We likewise reject defendant's argument that he was denied his constitutional rights to due process and a fair trial by a jury in the county in which the offense was alleged to have been committed.

Given our conclusion, we need not consider the People's alternative argument that venue was also proper under § 18-1-202(1).

## II. Extraterritorial Arrest

■ Defendant next contends that the trial court erred in denying his motion to suppress on the grounds that his arrest in Adams County was unlawful because it was made by Denver police outside the boundaries of their jurisdiction. We disagree.

In reviewing a trial court's denial of a motion to suppress, we defer to the court's findings of fact and only reverse where the court's conclusions are unsupported by its evidentiary findings or where it applied an erroneous legal standard. *See Petersen v. People,* 939 P.2d 824, 828 (Colo.1997). The legal effect of undisputed controlling facts is a question of law and subject to de novo review. *People v. King,* 16 P.3d 807, 812 (Colo.2001).

A police officer is authorized to make an arrest outside of his or her jurisdiction only in limited circumstances. Section 16-3-106, C.R.S.2003; *People v. McKay,* 10 P.3d 704, 706 (Colo.App.2000). Here, the People concede that Denver police officers were acting outside of their statutory authority under § 16-3-106 when they arrested defendant in Adams County.

An arrest in violation of § 16-3-106 does not, however, mandate suppression of evidence obtained therefrom unless the statutory violation is either willful or so egregious as to violate the defendant's constitutional rights. *See People v. Vigil,* 729 P.2d 360, 366-67 (Colo.1986); *People v. McKay, supra,*

10 P.3d at 707. Further, "the facts with respect to the reasons for and nature of extraterritorial actions of police officers are highly important in determining whether suppression of evidence is required when police officers make arrests outside the boundaries of their jurisdictions." *People v. Vigil, supra,* 729 P.2d at 367.

## A. Willful Disobedience

First, we agree with the trial court that the officers here did not act in willful disobedience of § 16–3–106.

As noted, a finding of willful disobedience of § 16–3–106 is closely tied to the particular facts of a case and the nature and circumstances of the police actions in question. *See People v. Vigil, supra.* Although Colorado courts have not previously addressed the issue, we agree with the trial court that willfulness is properly analyzed in this case by considering that defendant's extraterritorial arrest was made in the context of an undercover operation.

Further, under the undisputed facts of the undercover operation here, the trial court properly concluded that defendant's extraterritorial arrest in violation of the statute was not willful. *See State v. Filipi,* 297 N.W.2d 275 (Minn.1980)(extraterritorial arrest not unlawful where police had valid basis for arrest based on undercover drug operation); *see also People v. Meyer,* 424 Mich. 143, 379 N.W.2d 59 (1985)(noting unique characteristics of undercover drug operations and refusing to dismiss felony complaint sworn by undercover officer who bought drugs outside of his jurisdiction at defendant's invitation).

The record supports the trial court's finding that the detective did not travel to Adams County of his own volition, but rather was directed there by codefendant. Further, the record supports the trial court's findings that, if the detective had not followed codefendant's direction, he might have compromised his cover and the operation and that the fast-moving pace of the events here, particularly in light of the undercover nature of the operation, prevented the detective from calling in assistance from Adams County law enforcement officials until after the drug transaction was accomplished and arrests

were made. Further, the record reflects that the detective and his fellow officers acted in good faith. *See People v. Vigil, supra,* 729 P.2d at 368 (where police officers acted in good faith, although beyond their authority, extraterritorial arrest was not in willful violation of § 16–3–106).

We disagree with defendant's contention that "willful" means "voluntary, by choice, intentional and purposeful." *Cf. Pettingell v. Moede,* 129 Colo. 484, 491, 271 P.2d 1038, 1042 (1954)(defining willful action in the context of negligence by an operator or owner of a motor vehicle). The Colorado cases addressing willful violation of § 16–3–106 have not utilized such a definition. Indeed, on at least two occasions, Colorado courts have declined to find a willful violation even when the police voluntarily and knowingly crossed jurisdictional lines to effect an arrest. *See People v. Vigil, supra,* 729 P.2d at 362; *People v. Lindsey,* 805 P.2d 1134, 1137 (Colo. App.1990), *overruled on other grounds by People v. Milton,* 864 P.2d 1097 (Colo.1993). We reach the same result on the facts here.

In concluding that the statutory violation here was not willful, we do not announce a broad rule that all extraterritorial arrests that result from an undercover police operation are necessarily not willful. Rather, we conclude only that the unique nature and circumstances of an undercover operation are appropriate factors for the court to consider in determining willfulness in the context of a motion to suppress.

## B. Constitutional Rights

Defendant also contends that the trial court erred in denying his motion to suppress because his extraterritorial arrest violated his constitutional rights. We are not persuaded.

Statutory violations of § 16–3–106 are not per se violations of constitutionally protected rights. *See People v. Vigil, supra,* 729 P.2d at 366; *People v. Thiret,* 685 P.2d 193, 200 (Colo.1984); *People v. Wolf,* 635 P.2d 213, 217 (Colo.1981) (unlawful extraterritorial arrest outside of Denver not unconstitutional where defendant actually committed crime in presence of Denver police).

We disagree with defendant's assertion that the conduct of the detective and his fellow officers was so egregious as to violate defendant's constitutional rights to due process, to freedom from unreasonable searches and seizures, and to a fair trial.

Here, defendant's constitutional rights were not violated simply because he was arrested without an arrest warrant. As the trial court found, the detective was operating undercover, and it is not surprising that the operation led to an immediate arrest after the drug transaction was completed. Moreover, the drug transaction took place in the presence of the detective, which thus validated the warrantless arrest. *See People v. Wolf, supra.*

Finally, defendant's claim that his arrest in violation of § 16–3–106 deprived him of his right to a fair trial in the county where the offense occurred is negated by our previous conclusion that venue was proper in Denver.

### III. Trial Issues

We reject defendant's contentions that the trial court erred in admitting certain evidence and allowing certain argument at trial.

### A. Motion in Limine

■ Defendant contends the trial court committed reversible error when it denied his motion in limine to exclude evidence of $1,140 in cash found on him at the time of his arrest. We disagree.

Trial courts are accorded broad discretion in determining the relevancy of evidence, its probative value, and its prejudicial effect. Absent an abuse of discretion, a trial court's evidentiary rulings will be affirmed. To show an abuse of discretion, the defendant must establish that, under the circumstances, the trial court's decision was manifestly arbitrary, unreasonable, or unfair. *People v. Ibarra,* 849 P.2d 33, 38 (Colo.1993).

Under CRE 401, evidence is relevant if it relates to a fact that is of consequence to the determination of the action and makes the existence of that fact more probable or less probable than it would be without the evidence. Under CRE 403, the evidence may be excluded if its probative value is substan-tially outweighed by the danger of unfair prejudice. *See People v. Carlson,* 712 P.2d 1018, 1021–22 (Colo.1986).

■ The admission of relevant evidence is strongly favored, and a reviewing court must accord the evidence its maximum probative value and its minimum prejudicial effect. *See People v. Gibbens,* 905 P.2d 604 (Colo. 1995).

Although the $1,140 found on defendant did not match any of the marked bills used by the police in the undercover operation, the trial court correctly found that the evidence was relevant because it made the assertion that defendant was engaged in drug distribution and dealing more probable. *See United States v. Martinez,* 938 F.2d 1078, 1083–84 (10th Cir.1991)(referring to large sums of cash as "tools of the trade" in the distribution of drugs and allowing such evidence as relevant to charge of cocaine distribution); *People v. Loggins,* 981 P.2d 630, 636 (Colo.App. 1998)(a large sum of money, a calculator, and a pager found on the defendant's person were relevant to the fact of defendant's involvement with drugs).

As required under CRE 403, the trial court also found that the probative value of the evidence would not be substantially outweighed by the danger of unfair prejudice to defendant. Upon our review of the record, we cannot say that the trial court's decision to admit the $1,140 in cash was an abuse of discretion.

### B. Motion to Strike Codefendant's Testimony

■ Next, defendant contends the trial court erred in denying his motion to strike codefendant's testimony after codefendant invoked his Fifth Amendment right against self-incrimination and refused to answer certain questions on cross-examination concerning violation of his probation and unrelated charges pending against him in Adams County. We disagree.

The trial court has discretion to determine the scope and the limit of cross-examination, and absent an abuse of discretion, its ruling will not be disturbed on review. *Vega v. People,* 893 P.2d 107, 118 (Colo.1995).

■ The Confrontation Clause of the United States Constitution guarantees the right of a criminal defendant to cross-examine witnesses testifying for the prosecution. *Vega v. People, supra.* It is constitutional error to limit excessively a defendant's cross-examination of a witness regarding the witness's credibility, especially cross-examination concerning the witness's bias, prejudice, or motive for testifying. *Merritt v. People,* 842 P.2d 162, 165 (Colo.1992). However, a trial court has "wide latitude . . . to place reasonable limits on cross-examination based on concerns about, for example, harassment, prejudice, confusion of the issues . . . or interrogation which is repetitive or only marginally relevant." *Merritt v. People, supra,* 842 P.2d at 166.

Evidence of a pending charge is admissible as bearing on a witness's particular credibility, such as bias, motive, or prejudice. *People v. Bowman,* 669 P.2d 1369, 1375 (Colo.1983). Wide latitude in cross-examination is needed when a prosecution witness is on probation and his testimony could be prompted by fear or concern for possible jeopardy to his probationary status. *People v. Bowman, supra.* But limits of relevancy exist, and an accused's right to confront and to cross-examine witnesses is not absolute and may be limited "to accommodate other legitimate interests in the criminal trial process." *People v. Cole,* 654 P.2d 830, 833 (Colo.1982)(quoting *Chambers v. Mississippi,* 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973)).

The decision whether to strike a witness's testimony based on his or her invocation of the Fifth Amendment privilege should focus on "whether the sought answer was closely related to the commission of the crime, or involved collateral or cumulative testimony concerning credibility." *People v. Coca,* 39 Colo.App. 264, 268, 564 P.2d 431, 434 (1977). The trial court should also consider whether there were other opportunities for impeachment of the witness during trial. *People v. Coca, supra.*

Here, defendant vigorously cross-examined codefendant on issues of bias and his motive for testifying for the prosecution. The trial court allowed defendant to cross-examine codefendant concerning the existence and details of his plea bargain in this case, including that codefendant's testimony against defendant was part of his plea agreement and that he was on probation which was subject to being revoked. Defendant also cross-examined codefendant on the existence and nature of the unrelated pending charges against him in Adams County.

Codefendant only invoked his Fifth Amendment privilege in response to questions concerning whether he had failed to comply with certain terms of his probation and questions seeking details on the underlying facts of the Adams County charges.

We conclude that the trial court did not abuse its discretion in limiting cross-examination of codefendant and denying defendant's motion to strike codefendant's testimony. The record supports the trial court's finding that the answers sought by defendant involved cumulative or collateral testimony concerning codefendant's credibility and were only marginally related, at best, to commission of the crime charged in the case. Defendant's cross-examination of codefendant provided the jury with more than enough information to form an opinion as to codefendant's credibility and alleged bias. Accordingly, we perceive no abuse of discretion by the trial court's denial of the motion to strike.

## C. Prosecution's Closing Argument

The prosecutor made the following statements at the beginning of closing argument:

This is a case about Maurice Ray and Maurice Ray following his instincts, just like he said when he got arrested, his first instinct was to run, and that's what he did. When he heard the police cars coming down the street, he ran. He got in the back seat of a blue Buick Regal and sped off and was stopped a few blocks away. That instinct, he's continuing that today. Mr. Ray is running, running away from taking responsibility from acts that happened.

Defendant objected. The trial court sustained the objection, and gave a curative instruction, telling the jury to disregard the

prosecutor's comments about defendant "running away from responsibility."

 Defendant contends that the prosecutor's improper comments constituted reversible error because they impinged on his constitutional rights to a jury trial and to remain silent. We disagree.

A criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial. *United States v. Young,* 470 U.S. 1, 11, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985); *People v. Rodgers,* 756 P.2d 980, 983 (Colo.1988). The basic question is whether the prosecutor's comment in context was calculated to direct the attention of the jury to the failure to testify. *See People v. Todd,* 189 Colo. 117, 121, 538 P.2d 433, 436 (1975); *People v. Lawson,* 37 Colo.App. 442, 551 P.2d 206 (1976). A prosecutor's ambiguous remarks not directly referring to a defendant's decision not to testify do not implicate the defendant's constitutional rights and are not grounds for reversal. *See People v. Allee,* 77 P.3d 831, 837 (Colo.App.2003); *People v. Fears,* 962 P.2d 272, 284–85 (Colo.App.1997).

Moreover, a curative instruction is generally sufficient to overcome any prejudice created by an improper argument. *People v. Pesis,* 189 Colo. 52, 54–55, 536 P.2d 824, 826 (1975); *People v. Fears, supra.* Absent a clear showing to the contrary, it is presumed that the jury understood and heeded the trial court's instruction. *People v. Pesis, supra.*

We do not read the prosecutor's ambiguous comments as implicating defendant's constitutional rights. *See People v. Allee, supra; People v. Fears, supra.* Further we conclude that the trial court's curative instruction was adequate to overcome any prejudice from the prosecutor's remarks. The court also specifically instructed the jury that a defendant is never compelled to testify, and the fact that he does not cannot be used as an inference of guilt or prejudice him in any

way. We presume that the jury understood and followed these instructions. Accordingly, the prosecutor's comments, when examined in the context of the entire record, provide no basis for reversal. *See People v. Fears, supra.*

Judgment affirmed.

Judge ROY and Judge NEY ** concur.