COLORADO COURT OF APPEALS                                    **2016COA107**

Court of Appeals No. 14CA2300
Adams County District Court No. 12CR1694
Honorable Patrick T. Murphy, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Tracy Lea Vasseur,

Defendant-Appellant.

ORDER AFFIRMED

Division I
Opinion by JUDGE FREYRE
Taubman and Dailey, JJ., concur

Announced July 14, 2016

Cynthia H. Coffman, Attorney General, Kevin E. McReynolds, Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Leslee A. Barnicle, Alternate Defense Counsel, Denver, Colorado, for
Defendant-Appellant

¶ 1 Defendant, Tracy Lea Vasseur, appeals from an order of restitution entered by the district court following a hearing. She contends that the district court violated her Sixth Amendment right of confrontation and the Colorado Rules of Evidence when it considered a written compilation in determining the amount of restitution. Because we conclude that neither the right of confrontation nor the rules of evidence apply in restitution proceedings, we affirm.

## I. Background

¶ 2 Vasseur and her mother (codefendant) assisted individuals located primarily in Nigeria (associates) with an Internet scam to take money from victims who were looking for love and companionship. Over the course of more than three years, Vasseur's associates targeted victims on dating and social networking websites, represented that they were members of the United States Armed Forces, and convinced the victims to wire money to an "agent" in Colorado through Western Union, MoneyGram, or various bank accounts.

¶ 3 Vasseur and her mother acted as the Colorado "agent" for numerous wire transfers. They kept a portion of the money sent by

the victims before wiring the remaining amount to their associates. Vasseur and her mother stole money from 374 victims.

¶ 4     In 2012, a grand jury indicted Vasseur for operating an enterprise through a pattern of racketeering activity in violation of the Colorado Organized Crime Control Act (COCCA), conspiracy to commit racketeering in violation of COCCA, nine counts of theft of $20,000 or more, theft of $5000 or more from an at-risk victim, money laundering, identity theft, four counts of forgery, criminal impersonation, and contributing to the delinquency of a minor. Under a plea agreement, Vasseur pleaded guilty to a pattern of racketeering activity in violation of COCCA in exchange for the dismissal of the remaining counts, a sentencing cap of eighteen years in prison, and the payment of restitution.

¶ 5     The court sentenced Vasseur to fifteen years in the custody of the Department of Corrections and reserved the issue of restitution for ninety days. Thereafter, the prosecution filed a request for restitution in the amount of $1,063,242. Vasseur objected and requested a hearing.

¶ 6     During the restitution hearing, the court admitted Exhibit A over Vasseur's objection. Exhibit A is a spreadsheet that lists the

wire transfers received by Vasseur and her mother. It shows the sender's name, the sender's age or date of birth, the sender's address, the date of the wire transfer, and the amount of the wire transfer.

¶ 7 The prosecution admitted Exhibit A through an agent with the Colorado Bureau of Investigation who testified that

- he was the primary investigator in Vasseur's case;

- there were 374 victims "from all over the United States and five other countries," including twenty-nine at-risk victims;

- the total amount of money lost by those victims was about $1,063,000;

- Vasseur and her mother kept "roughly ten percent" of the money they collected;

- Exhibit A was prepared by an analyst who worked for him;

- Exhibit A included the victims whose wire transfers had been received by Vasseur and her mother through Western Union, MoneyGram, and various bank accounts;

- Vasseur and her mother received wire transfers at approximately sixty-six different Western Union and MoneyGram locations;

- the investigating agents interviewed a large number of the victims and no evidence suggested that the money had been sent for a legitimate purpose;

- none of the money had been returned to the victims;

- Vasseur admitted in an interview that she knew there was no charity involved and that she took the money, kept a portion for herself, and sent the rest to Nigeria; and

- Vasseur never claimed to have received the money for a legitimate purpose.

¶ 8 At the conclusion of the restitution hearing, the court gave the parties an opportunity to submit further argument or authority. Vasseur filed a memorandum in support of her objection to the amount of restitution.

¶ 9 In response, the prosecution conceded that two of the senders listed in Exhibit A were inadequately identified, seven had incomplete or nonexistent contact information, and one was

arguably not a victim. It withdrew its restitution request for those ten people, reducing the amount of restitution requested by $52,774.45.

¶ 10     The district court imposed $1,010,467.55 in restitution, jointly and severally with Vasseur's mother. It found that the prosecution had proven, by a preponderance of the evidence, that the victims on the amended list had been defrauded by Vasseur's scam.

## II.  Restitution

¶ 11     Vasseur contends that the district court erred when it considered Exhibit A in imposing restitution. She argues that the court violated (1) her Sixth Amendment right of confrontation because she did not have an opportunity to cross-examine the witnesses who provided the information used to compile Exhibit A; and (2) the Colorado Rules of Evidence because Exhibit A contained inadmissible hearsay, lacked a proper foundation, and had not been properly authenticated. We disagree.

### A.  Standard of Review

¶ 12     We review a district court's restitution order for an abuse of discretion. *See People v. Welliver*, 2012 COA 44, ¶ 8. A court abuses its discretion if it "misconstrues or misapplies the law" or if

its ruling is manifestly arbitrary, unreasonable or unfair. *People v. Harris*, 43 P.3d 221, 225 (Colo. 2002); *People v. Reyes*, 166 P.3d 301, 302 (Colo. App. 2007). Claims of evidentiary error involving Confrontation Clause violations are reviewed de novo. *Bernal v. People*, 44 P.3d 184, 198 (Colo. 2002). Absent an abuse of discretion, the court's ruling will not be disturbed on appeal. *People v. Witt*, 15 P.3d 1109, 1110 (Colo. App. 2000). The parties dispute whether Vasseur preserved her Confrontation Clause claim. However, we need not resolve this dispute because we conclude no error occurred.

## B. Restitution is Part of a Defendant's Sentence

¶ 13 Offenders are required to pay "full restitution" to victims harmed by their misconduct. § 18-1.3-601(1)(b), C.R.S. 2015. This includes recovery of the "'actual, pecuniary damages sustained by the victim as the direct result of the defendant's conduct." *People v. Courtney*, 868 P.2d 1126, 1127 (Colo. App. 1993) (citation omitted). The restitution award should fulfill the statutory purpose of "simply making the victim whole to the extent practicable." *Id.* at 1128; *accord People v. Stafford*, 93 P.3d 572, 575 (Colo. App. 2004).

6

¶ 14    The restitution statute recognizes that "victims endure undue suffering and hardship resulting from . . . emotional and psychological injury" and that "[p]ersons found guilty of causing such suffering and hardship should be under a moral and legal obligation to make full restitution to those harmed by their misconduct."  § 18-1.3-601(1)(a)-(b).

¶ 15    The prosecution bears the burden of proving, by a preponderance of the evidence, both the restitution owed and that the victim's losses were proximately caused by the defendant.  *People v. Hensen*, 2013 COA 36, ¶ 11.  When the prosecution presents its evidence at a hearing, a defendant must have the opportunity to contest the amount of the victim's loss and its causal link to the crime.  *People v. Rivera*, 250 P.3d 1272, 1275 (Colo. App. 2010).  However, the court need not "conduct a mini-trial on the issue of damages."  *People v. Johnson*, 780 P.2d 504, 507 (Colo. 1989).

¶ 16    Restitution is part of the district court's sentencing function in criminal cases.  *See Roberts v. People*, 130 P.3d 1005, 1007 (Colo. 2006); *People v. Dunlap*, 222 P.3d 364, 368 (Colo. App. 2009).  Indeed, a sentence is illegal if the court fails to consider restitution,

7

a statutory requirement for every felony judgment of conviction. *See Dunlap*, 222 P.3d at 368; *see also* § 18-1.3-603(1), C.R.S. 2015. Moreover, a restitution order is appealable in accordance with "the statutory procedures applicable to the appellate review of a felony sentence." *Johnson*, 780 P.2d at 508.

¶ 17    We reject Vasseur's argument that restitution is not part of a sentence because the time to file a direct appeal (which runs from the date a sentence is imposed) is not delayed for the court's determination of a final amount.  After the legislature amended the restitution statute in 2000, the court was no longer required to set the amount of restitution at the time it imposed a sentence.  *See Sanoff v. People*, 187 P.3d 576, 578 (Colo. 2008).  The amendment allowed the court to order a restitution obligation and to postpone the determination of the amount of that obligation.  *See id.*  For that reason, the judgment became final once the court determined that a defendant was obligated to pay restitution.  *See id.*  Even after the amendment, restitution remains a part of a defendant's sentence. *See* § 18-1.3-603(1).

C.  The Right of Confrontation

¶ 18    "The right to confrontation is considered 'a *trial* right.'" *People v. Ray*, 252 P.3d 1042, 1048 n.7 (Colo. 2011) (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 52 (1987) (plurality opinion)).  Thus, the right of confrontation does not apply to sentencing proceedings. *See People v. Lassek*, 122 P.3d 1029, 1031-32 (Colo. App. 2005).

¶ 19    It follows then that the right of confrontation does not apply to restitution hearings because restitution is part of the sentencing proceeding.  *United States v. Battles*, 745 F.3d 436, 462 (10th Cir. 2014) (concluding that, because the right of confrontation is a trial right, a defendant does not have an absolute right to confront witnesses at a restitution hearing); *Franco v. State*, 918 A.2d 1158, 1161 (Del. 2007) (concluding that the right of confrontation does not apply in restitution hearings); *Box v. State*, 993 So. 2d 135, 138-39 (Fla. Dist. Ct. App. 2008) (relying, in part, on *Lassek* in reaching its conclusion that the right of confrontation does not apply to restitution hearings); *see also Oken v. Warden*, 233 F.3d 86, 91 (1st Cir. 2000) (extending lack of confrontation right to state postconviction proceedings).

## D.  The Rules of Evidence

¶ 20    Similarly, the Colorado Rules of Evidence do not apply to sentencing proceedings.  *See* CRE 1101(d)(3).  In fact, hearsay is admissible in a sentencing proceeding.  *See People v. Bruebaker*, 189 Colo. 219, 222, 539 P.2d 1277, 1279 (1975); *People v. Pourat*, 100 P.3d 503, 505 (Colo. App. 2004).  We note that the restitution statute contemplates the court's consideration of victim impact statements, which are necessarily hearsay.  *See* § 18-1.3-603(2).

¶ 21    As with the right of confrontation, the rules of evidence do not apply in a restitution proceeding because restitution is part of the sentencing process.  *Accord People v. Matzke*, 842 N.W.2d 557, 559-60 (Mich. Ct. App. 2013) (concluding that the rules of evidence do not apply to restitution proceedings because they are not applicable to sentencing proceedings and restitution is a part of sentencing); *State v. Morse*, 106 A.3d 902, 906-07 (Vt. 2014) (same).

### E.  Application

¶ 22    Because neither the right of confrontation nor the rules of evidence apply to a restitution proceeding, we conclude that Vasseur's arguments fail.  Therefore, we conclude that the district court did not abuse its discretion when it relied on Exhibit A in determining the amount of restitution.  *See Welliver*, ¶ 8.

## III. Conclusion

The order is affirmed.

JUDGE TAUBMAN and JUDGE DAILEY concur.