The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
July 25, 2019

## 2019COA111

**No. 17CA0775, *People v. Hernandez* — Criminal Law — Sentencing — Restitution; Criminal Procedure — Presence of Defendant; Constitutional Law — Due Process**

In this appeal of a restitution order, a division of the court of appeals concludes that a defendant has a right to be present at a restitution hearing. And based on the particular facts presented, the trial court plainly erred by holding the restitution hearing in Hernandez's absence, despite his attorney's attempted but ineffective waiver of his presence.

Court of Appeals No. 17CA0775
Weld County District Court No. 14CR2052
Honorable Thomas J. Quammen, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Joey Ray Hernandez,

Defendant-Appellant.

ORDER VACATED AND CASE
REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE WEBB
Furman and Brown, JJ., concur

Announced July 25, 2019

Philip J. Weiser, Attorney General, Frank R. Lawson, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Julia Chamberlin, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    In this appeal of a restitution order, defendant, Joey Ray Hernandez, presents a novel question in Colorado — does a defendant have a right to be present at a restitution hearing?  We conclude that the answer is "yes."  Turning to the particular facts presented, next we conclude that the trial court plainly erred by holding the restitution hearing in Hernandez's absence, despite his attorney's attempted but ineffective waiver of his presence.  So, the restitution order must be vacated and the case remanded for further proceedings.  But if on remand the trial court determines that Hernandez had authorized his attorney to waive his presence, a new restitution hearing need not be held.

## I.  Background

¶ 2    A jury convicted Hernandez of first degree assault for having stabbed the victim.  The trial court imposed a sentence to the custody of the Department of Corrections and gave the prosecutor sixty days to file a notice of restitution.  The prosecutor timely sought restitution of $2518.82 to compensate the Crime Victim Compensation Fund.

¶ 3    Defense counsel filed a general objection.  But neither counsel nor Hernandez appeared at two scheduled status conferences.

Counsel did not respond to the trial court's direction to file a clarification of his objection. Nor did counsel request the court to perform an in camera review of any information related to the claim.

¶4 Eventually, defense counsel — but not Hernandez — appeared at the restitution hearing. Counsel explained, "I was going to writ him here. I didn't do that. But given all the circumstances in this case, I'm prepared to proceed to [sic] restitution hearing without his presence." The court did not reply to this statement and the hearing went forward.

¶5 The prosecutor called the Crime Victim Compensation Coordinator for the Nineteenth Judicial District as the sole witness. The coordinator described how the Crime Victim Compensation Board (CVCB) evaluates restitution applications. Where medical expenses are involved, the review includes looking at the nature of the services provided in light of the offense and at the dates of those services compared to the date of the offense. Next, the coordinator identified the victim's application. Then she explained that the process for determining proximate cause of the medical expenses had been followed in this case. Defense counsel neither cross-examined her nor presented any evidence.

¶ 6    The trial court found that the prosecutor had proved by a preponderance of the evidence that the medical expenses described in the restitution notice had been proximately caused by Hernandez's criminal conduct.  The court awarded the amount requested.

II.  Issues Presented, Preservation, and Standard of Review

¶ 7    Hernandez raises three contentions.

- Despite the statements of defense counsel, the trial court erred by proceeding with the restitution hearing in his absence.

- Applying the post-assault amendment to section 18-1.3-603, C.R.S. 2018, which lessens the prosecution's burden of proving causation, violated the Ex Post Facto Clauses of the United States and Colorado Constitutions.

- Applying section 18-1.3-603(10) also violated Hernandez's due process rights by creating a rebuttable presumption of causation that he cannot overcome because of limitations on information held by a CVCB.

¶ 8    The Attorney General asserts that Hernandez waived the first contention and challenges preservation of the second and third contentions.  Hernandez disputes waiver, concedes that he did not

preserve the first or second contentions, and argues that he preserved the third contention. In any event, he urges us to exercise our discretion and take up his statutory contentions in the interest of judicial economy.

¶ 9      We reject the Attorney General's waiver assertion but agree that Hernandez did not preserve the third contention. We exercise our discretion in the interest of judicial economy, but only to a point.

¶ 10      Alleged violation of a defendant's due process right to be present at all critical stages of a criminal proceeding is a constitutional question reviewed de novo. *People v. Wingfield*, 2014 COA 173, ¶ 13. And "Crim. P. 43(a) also requires as much, subject to a few exceptions." *People v. Janis*, 2018 CO 89, ¶ 16 n.2.

¶ 11      Where this due process right has been violated and the error preserved, reversal is required unless the Attorney General proves that the error was harmless beyond a reasonable doubt. *Zoll v. People*, 2018 CO 70, ¶ 17. If the error is unpreserved — but not waived — plain error review applies. *See Hagos v. People*, 2012 CO 63, ¶ 14. Under that test, reversal occurs only if the error was obvious and so undermined the fundamental fairness of the

4

proceeding that it casts serious doubt on the reliability of the outcome. *Id.*

¶ 12    No Colorado case has addressed whether violation of a defendant's right to be present under Crim. P. 43 is also reviewed de novo. However, we discern no reason to apply a different standard of review to the same right merely because the right is guaranteed by rule rather than by statute. But reversal for failure to follow a court rule is subject to the harmless error limitation in Crim. P. 52(a) rather than to the constitutional harmless error standard. *See Dawson v. People*, 30 P.3d 213, 220 (Colo. 2001) (Crim. P. 11).

¶ 13    The constitutionality of a statute is also subject to de novo review. *See, e.g., Coffman v. Williamson*, 2015 CO 35, ¶ 13. The reviewing court presumes the statute is constitutional. *Morris-Schindler, LLC v. City & Cty. of Denver*, 251 P.3d 1076, 1084 (Colo. App. 2010). And "[i]n both facial and as-applied challenges, the challenging party must prove that a statute is unconstitutional beyond a reasonable doubt." *Heotis v. Colo. State Bd. of Educ.*, 2019 COA 35, ¶ 17.

### III.  The Law of Restitution

¶ 14     Criminal defendants must "make full restitution to those harmed by their misconduct." § 18-1.3-601, C.R.S. 2018. "'Restitution' means any pecuniary loss suffered by a victim and includes but is not limited to all out-of-pocket expenses . . . ." § 18-1.3-602(3)(a), C.R.S. 2018.  "The prosecution bears the burden of proving, by a preponderance of the evidence, the amount of restitution owed and, generally, that the defendant's conduct was the proximate cause of the victim's loss." *People v. Henry*, 2018 COA 48M, ¶ 15.

¶ 15     A CVCB exists in each judicial district.  § 24-4.1-103(1), C.R.S. 2018.  The restitution statute's definition of "victim" includes these boards.  § 18-1.3-602(4)(a)(IV).  Losses compensable by a CVCB include "[r]easonable medical and hospital expenses." § 24-4.1-109(1)(a), C.R.S. 2018.

¶ 16     Documents submitted to a CVCB for purposes of receiving compensation are "confidential" under section 24-4.1-107.5(2), C.R.S. 2018.  As a result, "a defendant generally cannot obtain access to them." *Henry,* ¶ 28.

¶ 17    But in restitution proceedings, section 24-4.1-107.5(3) creates

a two-step process through which a defendant can obtain

information in CVCB records.  First, the defendant may make a

request that "is not speculative and is based on an evidentiary

hypothesis that warrants an in camera review."  *Id.*  Second, after

conducting such a review, the court may release information if it

finds that the information:

> (a) Is necessary for the defendant to dispute
> the amount claimed for restitution; and
>
> (b) Will not pose any threat to the safety or
> welfare of the victim, or any other person
> whose identity may appear in the board's
> records, or violate any other privilege or
> confidentiality right.

*Id.*

¶ 18    After a CVCB determines that compensation should be

awarded, it submits a statement to the court administrator, "who

shall remit payment in accordance with the statement of award."

§ 24-4.1-108(3), C.R.S. 2018.  Then under section

18-1.3-603(10)(a), "[i]f, as a result of the defendant's conduct," a

CVCB has "provided assistance to or on behalf of a victim," a trial

court must "presume[]" that the amount of the assistance that the

CVCB paid out was "a direct result of the defendant's criminal conduct," which the court "must . . . consider[] . . . in determining the amount of restitution ordered."

### IV. The Trial Court Plainly Erred by Proceeding with the Restitution Hearing in Hernandez's Absence

¶ 19 First, we consider whether a restitution hearing is a proceeding at which a defendant has a right to be present. Because we conclude that it is, we next consider whether counsel can unilaterally waive a defendant's presence. We conclude that counsel cannot do so. Last, because Hernandez did not preserve this issue, we consider whether the trial court committed plain error by proceeding in Hernandez's absence. We conclude that because plain error occurred, the restitution order must be vacated.

### A. The Restitution Hearing Is a Proceeding at which a Defendant Has a Right to be Present

¶ 20 Everyone would agree that as a matter of due process, both the United States and Colorado Constitutions "guarantee the right of a criminal defendant to be present at all critical stages of the prosecution." *People v. White*, 870 P.2d 424, 458 (Colo. 1994). Still, because not every step in a criminal proceeding is a critical stage, "[t]he right to be present is not absolute." *Id.*

8

¶ 21     Rather, a "critical stage of criminal proceedings is one where there exists more than a minimal risk that the absence of the defendant might impair his or her right to a fair trial." *People v. Cardenas*, 2015 COA 94M, ¶ 22.  In other words, "due process does not require the defendant's presence when it would be useless or only slightly beneficial." *People v. Isom*, 140 P.3d 100, 104 (Colo. App. 2005).

¶ 22     In Colorado, "[s]entencing is a critical stage of a criminal proceeding." *People v. Luu*, 983 P.2d 15, 19 (Colo. App. 1998).  And "[r]estitution is part of the district court's sentencing function in criminal cases." *People v. Vasseur*, 2016 COA 107, ¶ 16.  Indeed, "a sentence is illegal if the court fails to consider restitution," and "a restitution order is appealable in accordance with 'the statutory procedures applicable to the appellate review of a felony sentence.'" *Id.* (citation omitted).

¶ 23     In other jurisdictions, restitution hearings are a critical stage. *See, e.g., L.W. v. State*, 163 So. 3d 598, 600 (Fla. Dist. Ct. App. 2015) (right to be present); *Gibson v. State*, 737 S.E.2d 728, 730 (Ga. Ct. App. 2013) (same); *State v. Ball*, 293 P.3d 816 (Kan. Ct. App. 2013) (same); *State v. Rodriguez*, 889 N.W.2d 332, 334 (Minn.

Ct. App. 2017) (same); *cf. State v. Alspach*, 554 N.W.2d 882, 884 (Iowa 1996) (right to counsel); *State v. Jamieson*, 414 P.3d 559, 567 (Utah Ct. App. 2017) (same), *cert. granted*, 421 P.3d 439 (Utah May 9, 2018) (No. 2018140). While the Attorney General challenges the rationale in some of these cases, he cites no directly contrary authority. Nor have we found any.

¶ 24 But does the "useless or only slightly beneficial" test serve to limit the "critical stage" analysis or only to identify case-specific circumstances where a defendant's absence at a critical stage is harmless? In our view, sentencing — including imposition of restitution — is a critical stage at which a defendant has a due process right to be present. Still, if particular facts show that the defendant's presence would be useless or only slightly beneficial, proceeding in the defendant's absence will be harmless beyond a reasonable doubt. *See People v. Munsey*, 232 P.3d 113, 120 (Colo. App. 2009) ("The record in this case shows that defendant's presence [when the court responded to a jury question] would have been useless, rendering any constitutional error harmless beyond a reasonable doubt."). But our inquiry does not end here.

¶ 25     Under Crim. P. 43, entitled "Presence of the Defendant," the defendant "shall be present . . . at the imposition of sentence." Although no Colorado case has applied this rule to a restitution hearing, a closer look shows that a restitution hearing is a component of sentencing at which the defendant must be present. Specifically, paragraph (e)(2) extends the option of presence "by the use of an interactive audiovisual device" to "(VI) Restitution hearings."

¶ 26     Like the constitutional right to be present, however, the right to be present under Crim. P. 43 is not absolute. "For instance, a defendant need not be present at a conference or argument on a question of law." *People v. Gallegos*, 226 P.3d 1112, 1120 (Colo. App. 2009) (citing Crim. P. 43(c)(2)). While Crim. P. 43(c) identifies "situations" in which a defendant's presence is not required, restitution proceedings are not among those listed.

B.  Defense Counsel Could Not Waive Hernandez's Presence

¶ 27     The trial court may have chosen to proceed in Hernandez's absence because defense counsel not only failed to object to proceeding, but invited the court to do so. In a felony proceeding, however, a defendant's right to be present "cannot be waived by

11

counsel." *Penney v. People,* 146 Colo. 95, 101, 360 P.2d 671, 673 (1961); *accord Wingfield,* ¶ 19 ("[D]efense counsel cannot waive a defendant's right to presence at critical stages of criminal proceedings."). Nor is this a situation where Hernandez was initially present and then voluntarily absented himself from the restitution hearing. *See* Crim. P. 43(b)(1). To the contrary, the record does not show that Hernandez even knew of the restitution hearing, much less that he authorized his counsel to waive his presence.

¶ 28 The Attorney General does not argue otherwise. Instead, he requests only that if we set aside the restitution order, the trial court hear evidence and make a finding on counsel's authorization. *See Janis,* ¶ 17 ("A defendant may waive her right to be present either expressly or through her conduct."). We accede to this request in formulating the scope of the remand.

¶ 29 In short, Hernandez "is entitled to plain error review because his claim was merely forfeited and not validly waived." *People v. Mumford,* 275 P.3d 667, 672 (Colo. App. 2010), *aff'd,* 2012 CO 2.

## C.  The Error Was Plain

¶ 30    Next we consider whether the error was obvious and, if so, whether it cast serious doubt on the reliability of the restitution award.

¶ 31    Under the plain error standard, "the defendant bears the burden to establish that an error occurred, and that at the time the error arose, it was so clear cut and so obvious that a trial judge should have been able to avoid it without benefit of objection." *People v. Conyac*, 2014 COA 8M, ¶ 54.  "An error is obvious if it contravenes either a clear statutory command, a well-settled legal principle, or Colorado case law." *People in Interest of T.C.C.*, 2017 COA 138, ¶ 15.

¶ 32    Colorado case law has not addressed whether a defendant has a constitutional or statutory right to be present when restitution is imposed.  *See, e.g.*, *People v. Howard-Walker*, 2017 COA 81M, ¶ 57 (Any error was not obvious because "no Colorado case has directly addressed the distinction between lay and expert testimony with respect to whether a gun depicted in a video is real or fake."), *rev'd on other grounds*, 2019 CO 69.  The handful of out-of-state cases cited above hardly establishes "a well-settled legal principle."  But

while no statute recognizes a defendant's right to be present, recall that Crim. P. 43 does so.

¶ 33    No Colorado case has applied the "clear statutory command" aspect of obviousness to a court rule. *Cf. People v. Smalley*, 2015 COA 140, ¶ 85 ("The error was obvious because the court's obligation to afford a defendant an opportunity to speak at sentencing was well-settled under Colorado statutes, *court rules*, and case law.") (emphasis added).  However, because we cannot discern a principled basis on which to afford court rules less weight than statutes in determining obviousness, we conclude that the error was obvious.

¶ 34    "The defendant must also establish that the error was so grave that it undermined the fundamental fairness of the trial itself . . . as to cast serious doubt on the reliability of the conviction."  *Conyac*, ¶ 54.  In deciding whether Hernandez has met this burden, three considerations tilt the field in his favor.

¶ 35    First, the threshold is low.  *See, e.g.*, *Wingfield*, ¶ 18 ("Due process does not require the defendant's presence when his or her presence would be useless.").  Second, where a defendant was absent — and here, through no fault of his own — determining

what the defendant's presence could have added will often be difficult. *See People v. Safety Nat'l Cas. Corp.*, 366 P.3d 57, 62 (Cal. 2016) ("[T]he issue often involves determining whether the defendant's absence from a proceeding constitutes a denial or violation of due process."). And third, a defendant's presence at sentencing "serves to advance the right of the accused to be informed directly of his sentence and to advance society's interest in the appearance of fairness." *Luu*, 983 P.2d at 19.

¶ 36 According to Hernandez, his presence at the hearing would have been useful because he and the victim were acquaintances in Fort Lupton, which is a small town, and he "could have provided defense counsel with critical information disputing the nature and extent of [the victim's] injury." *See Zoll*, ¶ 27 (noting the absence of any need "for Zoll to provide feedback to his counsel about any matter" as a 911 tape was replayed for the jury). Still, on the present record, what information Hernandez possessed is unknown and, more importantly, unknowable.

¶ 37 The Attorney General responds that because Hernandez lacks medical expertise, he could not have opined on either the extent of the victim's injuries or the need for treatment. Also, the Attorney

General continues, albeit without record citations, Hernandez "was not present when the victim was taken to the emergency room or during any subsequent examinations or treatment."

¶ 38     Yet, even if all that the Attorney General says is true, Hernandez bonded out December 15, 2014 — thirty days after the charged offense — and reimbursement included undescribed medical services rendered on March 12 and 19, 2015 — four months after the stabbing.  So, at least in theory, had Hernandez been present at the hearing, he could have prompted his counsel to ask the coordinator whether she was aware that the victim had been physically active and appeared healthy between December 15 and March 12.  And if she denied such knowledge, he could have testified to his observations of the victim.

¶ 39     Either way, the need for ongoing treatment, the nature of which is not disclosed, could have been undercut.  For this reason, the Attorney General's reliance on *People v. Rosales,* 134 P.3d 429, 433 (Colo. App. 2005) ("Here, defendant has never asserted that no victim suffered any pecuniary loss . . . ."), is misplaced.

¶ 40     Instead, because restitution had not yet been addressed, the hearing was like imposing a new sentence based on new evidence.

16

*See People v. Nelson*, 9 P.3d 1177, 1178 (Colo. App. 2000) ("[W]hen the court imposes a new sentence," the defendant must be present.). By the same token, it was unlike a court merely announcing its decision, based on evidence received earlier when the defendant was present. *See Luu*, 983 P.2d at 19 ("[D]efendant was present at both his sentencing and resentencing hearings, when the information relied upon by the court for its sentencing decision was presented."). In other words, while a defendant's presence may not be beneficial "at a conference or argument on a question of law," *Gallegos*, 226 P.3d at 1120, the proximate cause issue to be resolved at the restitution hearing raised a question of fact. *See Wagner v. Planned Parenthood Fed'n of Am., Inc.*, 2019 COA 26, ¶ 27 ("[P]roximate cause is typically a question of fact . . . .") (citation omitted).

¶ 41　　In sum, we conclude that the restitution award must be vacated as plain error.

### D. The Attorney General Has Not Shown that Hernandez's Absence Was Harmless Beyond a Reasonable Doubt

¶ 42　　Having resolved the plain error question in Hernandez's favor, how we could in the next breath conclude that his absence was

17

harmless beyond a reasonable doubt is at best unclear. Be that as it may, because the Attorney General argues that the error was harmless beyond a reasonable doubt, we address it briefly.

¶ 43    This argument misses the mark in two ways. First, under constitutional harmless error review,

> the classic formulation for applying the harmless beyond a reasonable doubt test to improperly *admitted* evidence — *see, e.g.*, *People v. Frye*, 2014 COA 141, ¶ 15 (considering whether the improperly admitted evidence contributed to the verdict, not whether the same verdict would probably have resulted regardless of the tainted evidence) — [is not] as easy to apply where evidence has been improperly *excluded.*

*People v. Dunham*, 2016 COA 73, ¶ 64. Second, proceeding without Hernandez present raises a problem like that noted in *Dunham* — who knows what he might have said? And third, the Attorney General's burden — harmless beyond a reasonable doubt — is a "high bar." *People v. Godinez*, 2018 COA 170M, ¶ 84.

¶ 44    In the end, we conclude that the restitution order must be vacated and the case remanded. On remand, the trial court must hold a hearing, with Hernandez present. At that hearing, the court must first determine whether Hernandez authorized his counsel to

18

waive his presence at the earlier hearing. If the court so concludes, it shall reinstate the restitution award, subject to addressing any statutory issues that Hernandez may raise, as discussed below. If the court concludes otherwise, it shall proceed to hear both parties' evidence concerning restitution and make findings, again subject to any statutory issues that Hernandez may raise.

## V. We Decline to Address Whether Application of Section 18-1.3-603(10) Constitutes an Ex Post Facto Violation

¶ 45    The assault occurred on November 16, 2014. By the time of the restitution hearing in 2017, the General Assembly had amended the restitution statute by adding subsection (10) to section 18-1.3-603. Ch. 60, sec. 6, § 18-1.3-603, 2015 Colo. Sess. Laws 147. Recall, this subsection creates a rebuttable presumption that assistance provided by a CVCB to or for the benefit of a victim was the "result of the defendant's conduct." In contrast, before this amendment, "a compensation board's payment did not, by itself, establish its right to restitution. [A] trial court was still required to determine whether the amount paid was proximately caused by the defendant's criminal conduct." *Henry*, ¶ 20.

19

¶ 46    Hernandez contends that because the new statutory presumption reduces the prosecution's burden in proving restitution, applying it to him violated the ex post facto prohibition in article I, section 10 of the United States Constitution and article II, section 11 of the Colorado Constitution. But the parties' disagreement on exactly what the trial court did at the end of the restitution hearing clouds this issue. According to Hernandez, the court applied subsection (10). According to the Attorney General, the court appropriately exercised its discretion based on the evidence presented.

¶ 47    Two factors confound resolving this disagreement. On the one hand, the court did not refer to subsection (10) at all. On the other hand, and perhaps for this reason, Hernandez did not argue ex post facto below. Because we decline to address the merits of this issue, we need not consider the consequences of Hernandez's failure to have preserved it.

¶ 48    Either way, because we have vacated the restitution order, on remand Hernandez can raise, and if he does so the trial court must address, the applicability of subsection (10). But instead of waiting, should we resolve the ex post facto question now?

¶ 49     True, as Hernandez points out, a division of this court has exercised its discretion and addressed an unpreserved ex post facto challenge to "promote efficiency and judicial economy." *People v. DeWitt*, 275 P.3d 728, 730 (Colo. App. 2011). He argues that we should do so because "[a]ll of the facts necessary for resolution of the constitutional challenge here are undisputed and appear in the record before us." *Wood v. Beatrice Foods Co.*, 813 P.2d 821, 822 (Colo. App. 1991).

¶ 50     We decline his invitation for two reasons. First, "under the doctrine of constitutional avoidance, we address constitutional issues only if necessary." *People v. Valdez*, 2017 COA 41, ¶ 6 (collecting cases). Second, probing the depths of ex post facto law would not necessarily promote judicial economy.

¶ 51     On remand, if the trial court finds that Hernandez authorized counsel to waive his appearance and reinstates the restitution award, Hernandez can then raise his ex post facto argument and ask the court to clarify whether it relied on subsection (10) in determining proximate cause. Likewise, if the court finds no such authorization and holds another hearing, Hernandez can also raise this argument. Either way, the court may moot the ex post facto

issue by explaining that it did not — or does not — rely on subsection (10).

¶ 52     Therefore, we leave the ex post facto question for another day.

### VI.  We also Decline to Address Whether the Rebuttable Presumption in Section 18-1.3-603(10) Violates Due Process as Applied, but Conclude that this Statute Does not Violate Due Process on its Face

¶ 53     Finally, Hernandez contends that because section 18-1.3-603(10) creates a rebuttable presumption and the information submitted to the CVCB is confidential, he "cannot contest the CVCB's request for restitution," thus denying him due process.  *See Heiner v. Donnan*, 285 U.S. 312, 329 (1932) ("[A] statute creating a presumption which operates to deny a fair opportunity to rebut it violates the due process clause of the Fourteenth Amendment.").

¶ 54     But wait.  As discussed in the previous section, we do not know whether the trial court applied, or whether if it conducts a new hearing it will apply, the rebuttable presumption in section 18-1.3-603(10).  So, for the same reasons we decline to address Hernandez's ex post facto contention, should we also decline to address his due process contention?

¶ 55    Answering this question is more difficult because even if the trial court did not, and on remand does not, apply section 18-1.3-603(10), Hernandez could still be on the horns of a dilemma: to obtain an in camera review of information held by the CVCB, he must present "an evidentiary hypothesis." § 24-4.1-107.5(3). Yet, without knowing what information the CVCB has, he says that he cannot present such a hypothesis.

¶ 56    Unsurprisingly, the Attorney General offers an easy answer — because Hernandez did not request an in camera review, much less raise a supposedly related due process problem in the trial court, we should not address this issue. To the extent that Hernandez asserts unconstitutionality as applied, the Attorney General is correct. Hernandez's failures below resulted in an inadequate record. And "we cannot determine the constitutionality of an as applied challenge without a complete record of relevant facts." *People v. Torres*, 224 P.3d 268, 273 (Colo. App. 2009) (collecting cases).

¶ 57    To the extent that his challenge is facial, however, lack of preservation is not a fatal flaw. *See, e.g., Fuentes-Espinoza v. People*, 2017 CO 98, ¶ 19 ("We have long made clear that we will

exercise our discretion to review unpreserved constitutional claims when we believe that doing so would best serve the goals of efficiency and judicial economy.").  And because a facial challenge deals only with the statutory language, the challenge does not depend on factual development in the record.

¶ 58 Exercising our discretion here might further judicial economy by saving trial courts from having to revisit this question.  And in any event, the principle that "a facial challenge can only succeed if the complaining party can show that the law is unconstitutional in all its applications," *Dallman v. Ritter*, 225 P.3d 610, 625 (Colo. 2010), provides a ready answer.

¶ 59 Consider the "Claimant Payment Summary" introduced during the restitution hearing.  It included the names of two payees — Heather L. Rogers and SCL Health System — along with the amounts paid and the dates of payments.  As to Ms. Rogers, who is not otherwise identified, because the payment could have been for anything, forming an "evidentiary hypothesis" might be difficult.  In contrast, as to SCL, knowing that the victim had suffered a knife wound and that SCL is a health care provider, Hernandez could have easily formed such an hypothesis: "Defendant needs to

discover the nature and dates of the medical services provided to ascertain the nexus, if any, to the injury sustained."

¶ 60 In the end, because the statute is not unconstitutional in all its applications, the facial challenge fails.

## VII. Conclusion

¶ 61 The restitution order is vacated, and the case is remanded for further proceedings consistent with this opinion.

JUDGE FURMAN and JUDGE BROWN concur.