22CA0491 Peo v Toney 10-17-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA0491
Ouray County District Court No. 19CR15
Honorable D. Cory Jackson, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Randy Alan Toney,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE JOHNSON
Fox and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 17, 2024

Philip J. Weiser, Attorney General, Marixa Frias, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Kamela Maktabi, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Randy Alan Toney (Toney), appeals the judgment of conviction entered on jury verdicts finding him guilty of four counts of stalking.

¶ 2     On appeal, Toney contends that (1) the district court erred by declining to give his tendered jury instruction; (2) the district court violated his constitutional rights to be present and to have counsel at a critical stage of the proceedings; and (3) the prosecutor committed misconduct in her opening statement and closing argument. We reject all his contentions and, therefore, affirm his judgment of conviction.

## I.     Background

¶ 3     Toney and the victim, R.E., worked together and dated in high school but had lost touch until they reconnected through Facebook in 2016. After reconnecting, they communicated sporadically by phone and through Facebook from 2016-2019. R.E. eventually restricted Toney's access to her Facebook profile after her friends suggested that Toney was kind of "obsessed" with her and he "was taking everything [she posted] as a direct message to him."

¶ 4     In 2019, R.E. moved to Ouray, Colorado. In February 2019, Toney texted R.E. that he was driving from Kansas to visit her. At

trial, R.E. stated that, while she had not asked him to come, she told him she "thought it would be healing for him to come up here and see the stars from up in the mountains." When Toney arrived, he and R.E. went to an overlook where they talked for a while. The next day, she went to his hotel room and he tried, but she did not allow him, to kiss her. Toney returned to Kansas.

¶ 5    Over the next few months, Toney began repeatedly calling and texting her, saying things of a sexual nature and demanding to know where she was. She told him to stop and eventually blocked him from her phone. He then began sending her letters and packages in the mail. She only responded to one of Toney's letters, returning a $500 money order that he had mailed to her.

¶ 6    After continued, unwelcome contact and an uninvited visit to her home, R.E. reported Toney's actions to the police. Toney was arrested and charged with four counts of stalking.[1] Toney waived his right to counsel and represented himself with advisory counsel.

---

[1] Toney was charged with one count of stalking under section 18-3-602(1)(a), C.R.S. 2024 (credible threat and conduct), two counts of stalking under section 18-3-602(1)(b) (credible threat and repeated communication), and one count of stalking under section 18-3-602(1)(c) (emotional distress).

¶ 7    At trial, R.E. described Toney's continued and repeated pattern of threatening communications.  Toney testified in his defense, providing an account of their long relationship, including messages and communications between them, to support that he had no way of knowing his contact and presence was unwanted by her.

¶ 8    The jury found Toney guilty as charged.  The district court sentenced Toney to two years in community corrections.

## II.    Jury Instructions

¶ 9    Toney contends that the district court reversibly erred by not providing his tendered instruction telling jurors that they should vote their conscience.  We disagree.

### A.    Standard of Review and Applicable Law

¶ 10    We review de novo whether the instructions accurately informed the jury of the governing law.  *Riley v. People*, 266 P.3d 1089, 1092 (Colo. 2011).  But a district court "has substantial discretion to formulate instructions if they are correct statements of the law and adequately cover the issues presented." *People v. Garcia*, 2021 COA 80, ¶ 9, *aff'd*, 2023 CO 30.  Therefore, we review for abuse of discretion a district court's decision "to give, or not to

give, a particular jury instruction." *Id.* A district court abuses its discretion if "its decision was manifestly arbitrary, unreasonable, or unfair, or was based on an erroneous understanding of the law." *Id.*

¶ 11    A district court may refuse to give a jury instruction when the contents of the proposed instruction "are embodied in other instructions given by [the court]." *Riley*, 266 P.3d at 1093. "We consider all of the instructions given by the trial court together to determine whether they properly informed the jury." *Id.*; *see also People v. Trujillo*, 83 P.3d 642, 645-46 (Colo. 2004); *Lybarger v. People*, 807 P.2d 570, 582 (Colo. 1991) ("The propriety of a particular jury instruction should be viewed in the context of the total instructions.").

## B.    Analysis

¶ 12    Toney's requested instruction said, "A verdict must be unanimous but it is not required that a verdict is reached, and [jurors] may vote their conscience." Although the district court acknowledged Toney's point, it did not want to deviate from the pattern jury instructions, indicating that if the jury later

demonstrated disagreement, the court could further instruct the jury at that time.

¶ 13    We reject, for three reasons, Toney's contention that the district court abused its discretion when it declined to give his tendered instruction.

¶ 14    First, Toney's instruction was akin to a modified-*Allen* instruction, which is "a supplemental jury instruction designed to encourage, but not coerce, a deadlocked jury into reaching a unanimous verdict." *Fain v. People*, 2014 CO 69, ¶ 2; *see also Allen v. People*, 660 P.2d 896 (Colo. 1983).  In such an instance, the jury is instructed that "each juror should decide the case for himself or herself" and "they should not surrender their honest convictions solely because of others' opinions or to return a verdict." *Fain*, ¶ 2.

¶ 15    Typically, modified-*Allen* instructions are given to a potentially deadlocked jury after initial deliberations.  *Id.*  Toney has not cited, nor are we aware of, any case law that requires the district court to instruct jurors to vote their individual conscience before a jury begins deliberations.  And even when there is a potential deadlock, the district court has discretion whether to give a modified-*Allen*

instruction given the circumstances. *Id.* at ¶ 4; *see Gibbons v. People*, 2014 CO 67, ¶ 1; *see also* COLJI-Crim. E:18 (2023).

¶ 16    Indeed, the district court here considered the potential later need for a modified-*Allen* instruction. The district court stated it will "become abundantly clear if the jury gets to a point where . . . they disagree." It continued, "And there are additional instructions if necessary that the jury can be instructed with about how to resolve that situation. So I don't think that would deviate from the pattern instructions on unanimity . . . ."

¶ 17    Second, Toney's requested instruction was already encompassed in other instructions given to the jury. Specifically, the court instructed the jury that for each count, "if you find from the evidence the prosecution has failed to prove any one or more of the crimes beyond a reasonable doubt, you should find the defendant not guilty of that crime." Although Toney's words did not mirror the instruction, it included his requested concept. *Riley*, 266 P.3d at 1092-93.

¶ 18    Third and finally, if given before any deliberations had occurred, the instruction could potentially have confused the jury by hinting at a jury's inherent power of jury nullification. "Jury

6

nullification is a jury's 'knowing and deliberate rejection of the evidence or refusal to apply the law because the result dictated by law is contrary to [each] juror's sense of justice, morality, or fairness.'" *People v. Scott*, 2021 COA 71, ¶ 13 (quoting *People v. Waller*, 2016 COA 115, ¶ 57). It "occurs when a jury acquits a defendant even though the members of the jury believe the defendant is guilty." *Id.*; *see also People v. Munsey*, 232 P.3d 113, 119 (Colo. App. 2009) (In pursuit of a unanimous verdict, a district court "may not give an instruction that expressly or impliedly coerces the jury to reach a verdict regardless of whether that would require a juror to 'surrender [his or her] conscientious convictions to secure an agreement.'" (quoting *Lowe v. People*, 488 P.2d 559, 561-62 (Colo. 1971))).

¶ 19     A defendant has no right to jury nullification, *see Dorsey v. People*, 2023 CO 51, ¶ 30; *Waller*, ¶ 59, and courts should avoid encouraging or promoting it, *see Scott*, ¶¶ 11-21. Toney's proposed language that jurors "may vote their conscience" suggested to the jury that, in deciding his case, it could focus on other issues besides the governing law and evidence presented at trial. *See id.* at ¶ 16.

7

¶ 20    Accordingly, we discern no abuse of discretion.

### III.    Right to be Present and Right to Counsel

¶ 21    Toney next contends that the district court violated his constitutional rights to be present and to be represented by counsel at the pretrial readiness conference.  We disagree.

### A.    Additional Facts

¶ 22    At the pretrial readiness conference, the prosecutor and Toney's advisory counsel were present, but Toney was not.  The prosecutor had mistakenly sent a writ to a jail in which Toney was not in custody.

¶ 23    The district court proceeded with the conference, noting, "Let's see if we can make just a little bit of progress" on some of the "outstanding issues" before trial.  The court confirmed that the prosecutor had jury instructions prepared.  Advisory counsel raised a possible scheduling conflict with the trial and requested a continuance, which the court denied because Toney was not present.  The trial proceeded on the scheduled date.

¶ 24    Before jury selection, the court indicated that jury instructions would be discussed thoroughly later in the proceedings, there were issues about a witness testifying on behalf of Toney and exhibits

proffered by the prosecution, and Toney raised questions about whether he would testify.

¶ 25    After the presentation of evidence, Toney moved to dismiss the charges "based on a violation of due process" because "the pretrial readiness conference was held without [Toney].  And the dates that were set for trial were changed without notice to him."  The court asked for authority supporting Toney's argument and what prejudice he suffered due to his absence.  After some back and forth between Toney and the court, the court denied his request to dismiss the charges, finding that Toney had not shown any prejudice.

## B.    Standard of Review

¶ 26    We review de novo whether a defendant's constitutional right to be present at all critical stages of a prosecution has been violated.  *People v. Janis*, 2018 CO 89, ¶ 14; *People v. Hernandez*, 2019 COA 111, ¶ 10.  We likewise review de novo whether a defendant's constitutional right to counsel has been violated. *People v. Bergerud*, 223 P.3d 686, 693 (Colo. 2010).

## C.  Right to be Present

¶ 27  Toney contends that the pretrial readiness conference was a critical stage of the prosecution for which his presence was necessary to defend against the charges.  We disagree.

¶ 28  A criminal defendant has a right to be present at all critical stages of the prosecution.  U.S. Const. amends. VI, XIV; Colo. Const. art. II, § 16; *People v. Guzman-Rincon*, 2015 COA 166M, ¶ 31.  A criminal defendant also has a right to the assistance of counsel at each critical stage.  *People v. Wright*, 2021 COA 106, ¶ 36.  The purpose of these rights is to secure the defendant a full and fair opportunity to be heard.  *See id.* at ¶ 37; *Guzman-Rincon*, ¶ 31.

¶ 29  A critical stage of the prosecution occurs "whenever [the defendant's] presence has a reasonably substantial relation to the fullness of [his] opportunity to defend against the charges." *Guzman-Rincon*, ¶ 31 (quoting *People v. Payne*, 2014 COA 81, ¶ 11). This right to be present, however, is not absolute, as it is not guaranteed "when presence [of the defendant] would be useless, or the benefit but a shadow." *Luu v. People*, 841 P.2d 271, 275 (Colo. 1992) (quoting *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987)).  If a

proceeding is a mere formality or for finalizing a ruling where findings were made previously when the defendant was present, the defendant has no such right to be present. *Id.*

¶ 30    Assuming without deciding that a pretrial readiness conference generally is a critical stage of the criminal proceeding, we discern on this record that the benefit of Toney's presence at the pretrial readiness conference in this case was "but a shadow."[2] *Id.* (quoting *Stincer*, 482 U.S. at 745); *see also People v. Isom*, 140 P.3d 100, 104 (Colo. App. 2005) ("However, due process does not require the defendant's presence when it would be useless or only slightly beneficial."). We reach this conclusion for three reasons.

¶ 31    First, in recognizing Toney's absence, the district court said that it wanted to make "just a little bit of progress" on some issues, but it "d[id not] want to go too much further without Mr. Toney

---

[2] Cases identifying a critical stage of the prosecution include *People v. Wingfield*, 2014 COA 173, ¶ 20 (competency hearing); *People v. Cardenas*, 2015 COA 94M, ¶ 24 (hearing on counsel's motion to withdraw); and *People v. Hernandez*, 2019 COA 111, ¶ 27 (imposition of restitution). Cases holding that a proceeding is not a critical stage of the prosecution include *People v. Wardell*, 2020 COA 47, ¶ 12 (a Crim. P. 35(c) hearing); *People v. Wright*, 2021 COA 106, ¶ 45 (a court's ex parte communications with the jury); and *People v. Isom*, 140 P.3d 100, 104 (Colo. App. 2005) (jury's review of a videotape of the victim's forensic interview).

here." For example, although the court asked the prosecutor about the jury instructions, none were discussed in depth; instead, the court was simply confirming that the "filed instructions were still the proposed" ones. And when advisory counsel informed the court of a personal matter that might interfere with the morning of the first day of trial, the district court said, "I can't address changing trial dates without Mr. Toney here . . . ." When the court concluded the hearing, it said it "would discuss the trial in more detail" on the morning of the trial.

¶ 32 Second, contrary to Toney's contention, the court actually addressed the issues he asserts he would have raised, had he attended the pretrial conference, on the first day of trial, when Toney was present. He contends that he would have requested to bifurcate the charges and he would have opposed a continuance because he "intended to exercise his right to a speedy resolution of the case." He relies on *Key v. People*, 865 P.2d 822 (Colo. 1994), to support that the pretrial readiness conference was "critical" because there existed "more than a 'minimal risk' that" his or counsel's absence "might impair [his] right to a fair trial." *Id.* at 825 (quoting *Gilbert v. California*, 388 U.S. 263, 267 (1967)).

12

¶ 33    Here, though, there was minimal risk of the court violating Toney's rights because no substantive rulings were made at that hearing.  And the court noted in its ruling denying dismissal that "the issues that I typically would address at a pretrial conference" were "addressed on the morning of trial concerning issues like jury selection and so forth."  And *Key* is factually distinguishable from this case.  Specifically, there existed in that case more than a "minimal risk" of violating the defendant's right to a fair trial because two jurors had made statements indicating they were motivated to arrive at a verdict that afternoon; thus, the defendant and his counsel should have been present for that discussion.  *Id.*  No such substantive matters were discussed or presented at the hearing in this case.

¶ 34    Third and finally, Toney did not show prejudice.  The court stated that Toney "could have filed" his motion to bifurcate even though "he wasn't present at that hearing."  And the court indicated that "the motions deadline had long passed," and it "had issued orders on that previously" so Toney was aware of those deadlines.  Even so, the court reasoned that "there's also no indication that a motion to bifurcate would be successful."

13

¶ 35 And even though it was rejected by the court, Toney tendered his jury instruction. His right to exercise a "speedy" resolution of the case was protected because the court was unwilling to entertain a continuance without Toney's presence, and the trial had been previously scheduled within the speedy trial deadline.

¶ 36 Accordingly, even assuming the pretrial conference was a "critical stage" of the proceedings, Toney's right to be present was not violated.

### D. Right to Counsel

¶ 37 Toney next contends that "he was not only excluded from the pretrial readiness conference, but since he was acting as his own counsel, he was also not represented at the proceeding," and therefore his Sixth Amendment right to counsel was violated. We decline to address this issue because we agree with the Attorney General that Toney waived this contention.

¶ 38 The Sixth Amendment of the United States Constitution guarantees a defendant the right to counsel. U.S. Const. amend. VI; *see also Argersinger v. Hamlin*, 407 U.S. 25, 30 (1972); *People v. Arguello*, 772 P.2d 87, 92 (Colo. 1989). "The right to counsel exists at every critical stage of a criminal proceeding." *Key*, 865 P.2d at

825.  As a corollary, the Sixth Amendment right to counsel likewise includes the right to self-representation. *Faretta v. California*, 422 U.S. 806, 832 (1975); *Arguello*, 772 P.2d at 92; Colo. Const. art. II, § 16 ("In criminal prosecutions the accused shall have the right to appear and defend in person . . . .").

¶ 39  Because defendants who manage their own defense relinquish "many of the traditional benefits associated with the right to counsel," *Faretta*, 422 U.S. at 835, the right to self-representation is conditioned on the requirement that defendants demonstrate "an intelligent understanding of the consequences of so doing," *Arguello*, 772 P.2d at 92 (quoting *People v. Moody*, 630 P.2d 74, 77 (Colo. 1981)).  Accordingly, before defendants may proceed pro se, they must first waive their right to counsel. *Id.* at 93.  A defendant's waiver of counsel is effective only if "(1) the defendant is competent to waive the right and (2) the waiver is made voluntarily, knowingly, and intelligently." *People v. Lavadie*, 2021 CO 42, ¶ 26.

¶ 40  Toney does not raise on appeal that his waiver of counsel was not voluntary, knowing, or intelligent.  Thus, we conclude that he waived any Sixth Amendment right to counsel at the pretrial conference, and we do not review this contention any further.

*People v. Rediger*, 2018 CO 32, ¶ 40 (waiver is the "intentional relinquishment of a known right or privilege" and "extinguishes error, and therefore appellate review").

## IV. Prosecutorial Misconduct

¶ 41    Toney contends that the prosecutor engaged in misconduct during opening statement and closing argument. We disagree.

### A. Standard of Review and Applicable Law

¶ 42    We review an unpreserved claim of prosecutorial misconduct for plain error. *People v. Licona-Ortega*, 2022 COA 27, ¶ 88. "To constitute plain error, any prosecutorial misconduct must be obvious and 'must be flagrant or glaring or tremendously improper, and it must so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction.'" *Id.* (quoting *People v. Weinreich*, 98 P.3d 920, 924 (Colo. App. 2004)).

¶ 43    We engage in a two-step analysis when reviewing prosecutorial misconduct claims. *Id.* at ¶ 85. "First, we determine whether the prosecutor's conduct was improper based on the totality of the circumstances." *Id.* "Second, we decide whether the misconduct warrants reversal under the applicable standard." *Id.*

¶ 44     A prosecutor has latitude to make arguments based on facts in evidence and reasonable inferences drawn from those facts, as well as to respond to the defendant's arguments. *People v. Maloy*, 2020 COA 71, ¶ 61.  We may consider "the language used, the context of the statements, the strength of the evidence, whether the prosecutor improperly appealed to the jurors' sentiments, whether the misconduct was repeated, and any other relevant factors" to make our determination. *People v. Liebler*, 2022 COA 21, ¶ 51.

### B.     Analysis

#### 1.     Opening Argument

¶ 45     In the opening statement, Toney takes issue with the prosecutor directing the jury to "do its job" like law enforcement did by investigating this case.  The prosecutor made the following remarks:

> And you'll hear testimony from law enforcement; they investigated this case, they spoke with [R.E.], they spoke with Mr. Turner, they spoke with — you know — everyone that was sort of involved in this case and [R.E.] kept all of the letters and all of the messages and everything.
>
> *And law enforcement; they did their job here. Okay.  And that's what I'm gonna be asking you to do, is do your job.*  When I get up here

17

> after you see — you hear from [R.E.], you hear from Mr. Turner, you hear from law enforcement, you see the stack of letters and Facebook messages and everything, and use your common sense to find Mr. Toney guilty of stalking [R.E.]. Thank you.

(Emphasis added.)

¶ 46    Although it is a better practice to avoid telling the jury to "do its job," we reject that this constitutes misconduct under this circumstance. Based on this record, Toney has not demonstrated that the jury was "influenced to stray from its responsibility to be fair and unbiased." *United States v. Young,* 470 U.S. 1, 18 (1985).

¶ 47    Other jurisdictions have held imploring the jury to "do its job" may be problematic if the comments are "linked to matters external to the case or unconnected to the evidence" or where they are "made in isolation, without reference to the evidence in the case." *State v. Albino*, 97 A.3d 478, 491 (Conn. 2014); *see also Wilks v. State*, 49 P.3d 975, 987 (Wyo. 2002) ("Generally, an exhortation to the jury to 'do the right thing,' to 'do your job,' or to 'do your duty' is error if it impl[ies] that, in order to do so, it can only reach a certain verdict, regardless of its duty to weigh the evidence and follow the court's instructions on the law." (quoting *Jackson v. State,* 791 So.

18

2d 979, 1029 (Ala. Crim. App. 2000))); *Young*, 470 U.S. at 18 (imploring the jury to do its job by convicting the defendant has "no place in the administration of criminal justice").

¶ 48   But here, the prosecutor asked the jury to do its job in connection with the evidence presented and gathered by investigative personnel.  Immediately following the "do your job" statement, the prosecutor referenced the evidence she would present to the jury, including victim, witness, and law enforcement testimony, and letters and messages Toney sent R.E.  Saying "do your job" in this context was not inherently improper because the argument highlighted only that the jury was to review evidence and provide a result.  *See People v. Tran*, 2020 COA 99, ¶ 68; *see also People v. Estes*, 2012 COA 41, ¶¶ 39-42.

## 2.   Closing Argument

¶ 49   During closing argument, Toney contends that the prosecutor told the jury that Toney's testimony did not "matter" by stating,

> So again, I'm going to stand up here again after Mr. Toney gets to do his closing.  And we'll go through the facts again about what is important, what you need to focus on.  And use your common sense.  Okay.  Everything that both [R.E.] and Mr. Toney testified about that happened in high school and couple visits

19

in between, okay. *The only thing that matters about that is that they were in that — they knew each other back then. Okay. What Mr. Toney believed* [R.E.] *was the vibes she was putting out there or playing cat or mouse back then, and they were in this back-and-forth relationship since high school. That doesn't matter here.* Okay.

The main thing is that [R.E.] didn't have a relationship with Mr. Toney. She told him that. They hadn't talked. And he repeatedly makes these credible threats to her and contacts and comes over and does all these things. And it scared — seriously scared her. It scared the pants off of her, okay. That is why you should find Mr. Toney guilty of all four counts, because he did all four different, similar but different types of stalking. Thank you.

(Emphasis added.) Toney contends that the prosecutor's statements during closing argument misled the jurors and misstated the law because she directed them not to consider Toney's subjective perceptions of the events leading up to his arrest.

¶ 50 But we do not read the prosecutor's statement in that manner; rather, the prosecutor juxtaposed their high school relationship with the lack of a current relationship, asking the jury to focus on the fact the parties did not have a current relationship for the stalking charges. Cf. People v. Carter, 2015 COA 24M-2, ¶¶ 62, 72

20

(arguments that a defense is a "red herring" are not impermissible so long as they are tied to the evidence); *see also Wend v. People*, 235 P.3d 1089, 1098 (Colo. 2010) (to determine whether reversal is required, courts consider, among other things, the "strength of the other evidence of guilt"); *Harris v. People*, 888 P.2d 259, 268 (Colo. 1995) ("[T]he sufficiency of the evidence presented at trial will be considered on appeal when evaluating claims of prosecutorial misconduct.").

¶ 51     Thus, we discern no prosecutorial misconduct.

V.     Conclusion

¶ 52     The judgment is affirmed.

JUDGE FOX and JUDGE SCHOCK concur.