The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
September 15, 2022

## 2022COA107

**No. 19CA0915, *People v. Rodriguez-Morelos* — Crimes — Identity Theft — Personal Identifying Information — Financial Identifying Information**

As is relevant to this appeal, the crime of identity theft, proscribed by section 18-5-902(1)(a), C.R.S. 2021, occurs when "[a] person . . . [k]nowingly uses the personal identifying information . . . of another without permission or lawful authority with the intent to obtain cash, credit, property, services, or any other thing of value." The definition of "personal identifying information," found in section 18-5-901(13), C.R.S. 2021, states that it is "information that may be used . . . to identify a specific individual." A division of the court of appeals interprets "personal identifying information" to mean only specified information concerning single, identified human beings. The division therefore concludes that defendant did

not commit the crime of identity theft when he used a nonprofit's name and documents, without its permission, to recruit people to take classes from him.

The division also concludes that the record of defendant's trial did not contain any evidence to show that defendant used the nonprofit's "financial identifying information," which is defined by section 18-5-901(7), with the intent to obtain cash or any other thing of value.

As a result of these two conclusions, the division further concludes that defendant's conviction for identity theft must be vacated.

COLORADO COURT OF APPEALS     **2022COA107**

Court of Appeals No. 19CA0915
Arapahoe County District Court No. 17CR1064
Honorable Jeffrey K. Holmes, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jesus Rodriguez-Morelos,

Defendant-Appellant.

JUDGMENT AFFIRMED IN PART, VACATED IN PART,
ORDER AFFIRMED, AND CASE REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE BERNARD*
Dunn and Johnson, JJ., concur

Announced September 15, 2022

Philip J. Weiser, Attorney General, Christine Brady, Senior Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Julia Chamberlin, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2021.

¶ 1    A jury found defendant, Jesus Rodriguez-Morelos, guilty of one count of identity theft, three counts of felony theft, and one count of criminal impersonation. He appeals the judgment of conviction and the trial court's restitution order. We vacate the conviction for identity theft but affirm the other convictions, and we remand the case to the trial court to amend the mittimus accordingly. We also affirm the restitution order.

## I.    Background

¶ 2    The Colorado Department of Regulatory Agencies investigated defendant after it received complaints that he was taking money for teaching certified nursing assistant classes that the state had not approved. Colorado law states that people can only become certified nursing assistants if they complete a state-approved program.

¶ 3    Defendant also did volunteer work for a nonprofit organization called United for Migrants that supported migrant workers. He participated in the nonprofit's food and toy drives, and he helped some immigrants get their GEDs. He started administering unsanctioned certified nursing assistant classes in 2015. Without the nonprofit's authorization, defendant told at least some of the

students that these classes were affiliated with the nonprofit and that he was acting on its behalf. For example, he referred to himself as the nonprofit's "Director of Education," a position that did not exist. Without the nonprofit's knowledge, he gave some students a tax-exempt document bearing the nonprofit's name.

¶ 4 The students saw the class as a path to obtaining better employment opportunities. Most, if not all, of the students in the class were Spanish-speaking immigrants, and at least some of them were undocumented. The class cost $63, and, over time, defendant added other certification programs at various costs, all related to the medical profession.

¶ 5 To induce students to take the certified nursing assistant class, defendant made two material misrepresentations. First, he said the class had been approved by the state. Second, he said that students did not need a social security number to become a certified nursing assistant. Although Colorado does not require a person to have a social security number to become a certified nursing assistant, one must be lawfully in the United States to become licensed and to work as a certified nursing assistant.

¶ 6    Defendant told students who did not have a social security number or lawful status that he would still be able to find them a job in the nursing field.  This was not true.

¶ 7    Before long, various problems with the courses started to arise.  The classes were overcrowded, and students felt that they were not learning the requisite skills to become certified nursing assistants.  Defendant frequently refused to provide students with receipts for their payments.  And none of the students who testified at trial had been hired as certified nursing assistants.

¶ 8    Defendant's theory of defense at trial was that he simply wanted to help the immigrant community by providing a legitimate service.

## II.    Sufficiency of the Evidence

¶ 9    As is pertinent to this appeal, "[a] person commits identity theft if he or she . . . [k]nowingly uses the personal identifying information [or] financial identifying information . . . of another without permission or lawful authority with the intent to obtain" money.  § 18-5-902(1)(a), C.R.S. 2021.

¶ 10    Section 18-5-901(13), C.R.S. 2021, defines "personal identifying information" as

information that may be used, alone or in conjunction with any other information, to identify a *specific individual*, including but not limited to a name; a date of birth; a social security number; a password; a pass code; an official, government-issued driver's license or identification card number; a government passport number; biometric data; or an employer, student, or military identification number.

(Emphasis added.)

¶ 11 "Financial identifying information" includes "[a] number representing a financial account or a number affecting the financial interest, standing, or obligation of or to the account holder," § 18-5-901(7)(b), "that can be used, alone or in conjunction with any other information, to obtain cash, credit, property, services, or any other thing of value or to make a financial payment," § 18-5-901(7).

¶ 12 The phrase "of another" "means that of a natural person, living or dead, or a business entity." § 18-5-901(11).

¶ 13 Defendant contends that the evidence in the record is not sufficient to support the identity theft conviction because (1) his use of the nonprofit's name and tax-exempt document did not constitute the use of personal identifying information as defined by section 18-5-901(13); and (2) although the tax-exempt document he

4

gave to some of the students was financial identifying information under section 18-5-901(7), there is no evidence in the record that he used this document to obtain money or any other thing of value as required by section 18-5-902(1)(a). We agree with both contentions.

### A. Personal Identifying Information Concerns Information Belonging Only to Human Beings

#### 1. Standard of Review and General Principles of Statutory Construction

¶ 14    Statutory interpretation is a question of law that we review de novo. People v. Perez, 2016 CO 12, ¶ 8. The primary purpose in interpreting statutes is to give effect to the General Assembly's intent. Hunsaker v. People, 2015 CO 46, ¶ 11. If the statutory language is clear, we apply its plain and ordinary meaning. Id.

¶ 15    "[W]e presume that the legislature [does] not use language idly." Robinson v. Colo. State Lottery Div., 179 P.3d 998, 1010 (Colo. 2008). "Rather, the use of different terms signals an intent on the part of the General Assembly to afford those terms different meanings." Id.; see also People v. Gulyas, 2022 COA 34, ¶ 38 (concluding that the rape shield statute's use of the separate terms "witness" and "defendant" meant that a defendant was not

5

considered a witness for purposes of that statute). "[W]e may not construe a statute so as to render any statutory words or phrases superfluous." People v. Rediger, 2018 CO 32, ¶ 22.

### 2. Discussion

¶ 16 Defendant asserts that the term "specific individual," which is contained in the definition of "personal identifying information" found in section 18-5-901(13), refers only to human beings and not to business entities such as the nonprofit. This means, he continues, that he did not commit identity theft under section 18-5-902(1)(a) because he did not use personal identifying information when he used the nonprofit's name and tax-exempt document. (Defendant does not assert that the trial evidence was insufficient to show that he used the nonprofit's name to obtain cash or anything of value. Even if he did, such an assertion would be unsuccessful because there was at least some testimony to that effect.)

¶ 17 The prosecution responds that the crime of identity theft requires proof that defendant used the personal identifying information "of another." The phrase "of another," the prosecution goes on, defines who the victims of identity theft are, and that class of victims includes business entities such as the nonprofit.

6

Limiting the definition of "personal identifying information" "to natural people," the prosecution's response finishes up, "would effectively nullify or render superfluous the General Assembly's chosen use of the phrase 'of another'" to define the universe of potential victims of identity theft.

¶ 18　　On the one hand, we think that the prosecution's response misses the mark. True, the phrase "of another" sets out who the victims of identity theft might be. But the definition of "personal identifying information" does not describe or affect the class of victims of identity theft; rather, it defines the types of information, documents, or items that defendants may take from victims to commit that crime. In other words, if the prosecution charges a defendant with identity theft for using personal identifying information, but the thing used does not fit within the definition of that term, then the defendant has not committed the crime.

¶ 19　　The term "of another" is not rendered superfluous by interpreting "personal identifying information" to include only specified information concerning human beings. For example, section 18-5-902(1)(a) contemplates that a person may commit identity theft by using the "financial identifying information" or the

"financial device" of another. No language in the definition of financial identifying information, see § 18-5-901(7), or the definition of financial device, see § 18-5-901(6), limits those terms to information concerning only human beings. So defendants may be convicted of identity theft if they use financial identifying information or a financial device belonging to a business entity, such as the nonprofit.

¶ 20    On the other hand, we think that defendant's contention hits the target. We conclude that the plain and ordinary meaning of the statutory language is clear and unambiguous, see Hunsaker, ¶ 11, and we further conclude that the term "specific individual" means one identified human being.

¶ 21    We begin our analysis by considering the dictionary definitions of the noun "individual" and the adjective "specific."

¶ 22    According to Webster's Third New International Dictionary 1152 (2002), the first sense of the noun "individual" has two potential subsenses that are pertinent:

- "a particular being or thing as distinguished from a class, species, or collection . . . a single human being as contrasted with a social group or institution"; and

- "a particular person."

¶ 23    The first sense of the adjective "specific" is "constituting or falling into the category specified."  Id. at 2187.  The verbal illustration for this sense of the word is "[specific] fertilizing agents such as nitrogen or phosphate."  Id.

¶ 24    When we put these definitions together, we see that the second subsense of "individual" — "a particular person" — would make the adjective "specific" superfluous: a specific particular person.  We cannot "render any statutory word[] . . . superfluous," Rediger, ¶ 22, and we must presume that the legislature did not use the phrase "specific individual" idly, see Robinson, 179 P.3d at 1009.

¶ 25    This problem is eliminated, however, if we employ the first subsense of the definition of "individual" — "a single human being as contrasted with a social group or institution."  This subsense recognizes the generic notion of single human beings.  By adding the adjective "specific," the generic notion — for example, there are approximately 740,000 single human beings who live in Denver — becomes the unique — one identified human being out of 740,000.

9

Using this subsense gives voice to both the noun and the adjective: one identified human being.

¶ 26    As a result, we additionally conclude that defendant's conduct of using the nonprofit's name and tax-exempt document was not the use of personal identifying information.  This means that his conviction for identity theft for such usage based on that charging theory cannot stand.  See Rediger, ¶ 31.

### B.    Defendant Did Not Use the Nonprofit's Financial Identifying Information with the Intent to Obtain Cash or Any Other Thing of Value

¶ 27    We must next decide whether the record contains evidence showing that defendant used the nonprofit's financial identifying information with the intent to obtain cash or any other thing of value.

### 1.    Standard of Review

¶ 28    We review de novo whether the evidence before the jury was sufficient both in quantity and quality to sustain a conviction.  *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010).  We must determine "whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support

10

a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." *Id.* (quoting *People v. Bennett*, 183 Colo. 125, 130, 515 P.2d 466, 469 (1973)).

## 2. Discussion

¶ 29 For the purposes of this contention, defendant concedes that he used a tax-exempt document bearing the nonprofit's name and that the document was financial identifying information. *See* § 18-5-901(7). But he submits that there was insufficient evidence to show that he used the document to obtain cash or anything of value. *See id.* Instead, he asserts that the only evidence about his use of the tax-exempt document showed that he gave it to students *after* they paid for his classes or at an unknown point in time.

¶ 30 The prosecution, in response, cites the theft statute for the proposition that a person can commit theft by retaining cash or a thing of value by threat or deception. *See* § 18-4-401(1), C.R.S. 2021. So, the prosecution's response proceeds, the timing of when defendant gave the tax-exempt document to the students was immaterial.

¶ 31 The prosecution's response, though, obviously relies on a different statute — the theft statute — than the one central to

11

defendant's contention — the identity theft statute. (We recognize that defendant was also convicted of three counts of theft, but defendant's contention does not incorporate them.) The theft statute is a proverbial apple, prohibiting a person from retaining cash by threat or deception, while the identity theft statute is a much narrower orange, focusing on whether the prosecution has proved beyond a reasonable doubt that the person *used* another's financial identifying information *with the intent to obtain* cash or any other thing of value. *See* § 18-5-902(1)(a).

¶ 32    As a result, the relevant question becomes whether defendant used the document to induce students to pay him for any of the courses that he offered. Based on our review of the record, we conclude the answer to this question is "no." To reach this conclusion, we carefully analyzed the trial evidence, and we determined that, in the light most favorable to the prosecution, the evidence as a whole was not substantial and sufficient enough to support a reasonable mind's conclusion that defendant used the document with the intent to obtain cash or any other thing of value. *See Clark*, 232 P.3d at 1291.

12

¶ 33    The trial evidence included testimony from a detective, who said that defendant gave some of the victims the document at the same time that he distributed a certificate of completion or diploma for taking a course.  But, as far as the detective was aware, all the victims paid for their courses upfront, and he confirmed that no victim withheld payment until after receiving a diploma or a certificate of completion.

¶ 34    Some of the victims also testified about the document.  None of them said that defendant told them either that they would receive the document if they signed up for the class or that there was a connection between taking the class and receiving the document.  Although some of the contracts they signed to take the class referred to a "tax deductible report," none of the victims testified that they enrolled in the class because of that reason; indeed, they did not seem to know what the document was, and there was no evidence that the "tax deductible report" and the document were the same thing.  Although some of the victims said that they had received the document, none of them added that receiving the document was one of the reasons why they took the class.

¶ 35    Therefore, we conclude that the evidence was insufficient to prove that defendant used the document, which was financial identifying information, with the intent to obtain cash or any other thing of value.  His conviction for identity theft based on that charging theory therefore cannot stand.  *See Rediger,* ¶ 31.  Because we have previously held that the conviction for identity theft for using personal identifying information likewise cannot stand, we therefore vacate defendant's conviction for identity theft, and, on remand, the trial court shall correct the mittimus accordingly.

### III.    Motion to Strike Victims' Testimony

¶ 36    Defendant asserts that the court erred because it denied his request to strike the testimony of two victims who invoked their Fifth Amendment privilege with respect to cross-examination about their immigration status.  We are not persuaded.

### A.    Standard of Review and Applicable Law

¶ 37    We review a trial court's decision to deny a motion to strike the testimony of a witness for an abuse of discretion.  *See People v. Ray,* 109 P.3d 996, 1002 (Colo. App. 2004).  A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or

14

unfair, or if it misapplies the law. *People v. Payne*, 2019 COA 167, ¶ 5.

¶ 38    The decision whether to strike a witness's testimony based on the invocation of the Fifth Amendment privilege should focus on "whether the sought answer was closely related to the commission of the crime, or involved collateral or cumulative testimony concerning credibility." *Ray,* 109 P.3d at 1002 (quoting *People v. Coca,* 39 Colo. App. 264, 268, 564 P.2d 431, 434 (1977)).

## B.    Discussion

¶ 39    Defendant asserts that he should have been allowed to cross-examine two victims about their immigration status to impeach their testimony that they believed him when he told them that they could each work in Colorado as a certified nursing assistant without a social security number. He argued that, if a victim was undocumented, then it necessarily meant that the victim had submitted a false social security number at some point in the past, which called the victim's credibility into question.

¶ 40    True, as defendant points out, in some circumstances a person's immigration status may be a key consideration for the jury. *See Doumbouya v. Cnty. Ct.,* 224 P.3d 425, 430 (Colo. App.

15

2009)(defendant had a right to cross-examine his wife, the complaining witness, about whether she understood the immigration consequences of his potential conviction because it supported the defendant's theory that she had fabricated the claims against him to gain custody of their son).

¶ 41    But, in this case, we conclude that whether a victim at some unknown point in the past submitted a false social security number was not "closely related to the commission of the crime" and involved collateral testimony about the victim's credibility. *See Ray*, 109 P.3d at 1002; CRE 403.  In this context, the key questions at trial were whether defendant told the victims that the state had approved the classes and that having a social security number was not a prerequisite to becoming a certified nursing assistant in Colorado.  Whether the victims were undocumented workers and whether they had previously submitted a false social security number were collateral to those key questions.

¶ 42    The jury had heard other evidence that similarly impacted the two victims' credibility, such as testimony creating the inference that they were undocumented workers.  For example, one of them said that she had asked defendant if she could get a certified

nursing assistant license without a social security number and that she would not have taken any of defendant's classes if she had known that having a social security number was a prerequisite to getting a license in Colorado. And there was testimony that defendant targeted the victims in this case because they were undocumented, so it would not surprise the jury to learn that two of the victims fell into that category along with others.

¶ 43 We therefore conclude that the court did not err when it denied defendant's motion to strike the testimony of these two witnesses.

## IV. "Uncharged Misconduct"

¶ 44 Defendant asserts that the cumulative prejudicial effect of what he deems as evidence of "uncharged misconduct" was so pervasive at trial that we must reverse all his convictions. We disagree.

### A. Standard of Review

¶ 45 We review the trial court's evidentiary rulings for an abuse of discretion. *People v. Clark*, 2015 COA 44, ¶ 14.

17

## B. Discussion

¶ 46    Defendant cites the following as evidence of uncharged misconduct that the court should not have admitted at his trial:

1. One witness said that defendant is a threatening person.

2. A victim testified that defendant did not pay rent to her even though she rented him a place to stay.

3. Six victims testified about classes that they had taken or paid for, but this testimony that was not reflected in the bill of particulars.

4. A detective said that some of the victims were not lawfully in the United States.

5. A ledger recorded the payments defendant received for the classes from victims and other students who had not testified.

¶ 47    With respect to the evidence in the preceding list's first four items, there was no error because, with two exceptions, the court sustained defense counsel's objections and instructed the jury to disregard the testimony. *See People v. Hogan,* 114 P.3d 42, 55 (Colo. App. 2004).

¶ 48    In one instance, the court overruled defense counsel's objection to allow a student to clarify that he *did not* take a specific

18

class.  Defendant does not explain how this testimony was prejudicial.  If anything, it appears to have benefitted defendant because it clarified for the jury that the specific class was not included in the theft counts.

¶ 49    In the other instance, a witness testified about a meeting during which defendant angrily threatened her.  Defendant did not object to this evidence, which would normally call for plain error review.  *See Hagos v. People*, 2012 CO 63, ¶ 14.  But we will not address this issue because defendant's explanation of why this putative error was plain is both conclusory and underdeveloped.  *See Sanchez v. Indus. Claim Appeals Off.*, 2017 COA 71, ¶ 41.

¶ 50    Turning to the fifth item on the list, the ledger, defendant contends that it was unfairly prejudicial because it contained the names of students who were not included in the theft counts, which could have induced the jury to convict him "based on the sheer quantity of uncharged victims/thefts."

¶ 51    Although the majority of students named on the ledger were not named as victims in the theft counts, we conclude that the probative value of the ledger's contents was not substantially outweighed by the danger of confusing or misleading the jury, as

defendant asserts. *See* CRE 401, 403. Rather, the court's verdict forms made it clear that the jury could only consider the victims named on the forms when deciding whether defendant had committed theft, and we presume that the jury followed this direction. *See People v. Chase*, 2013 COA 27, ¶ 37.

## V. Constructive Amendment

¶ 52    Defendant submits that the trial court erred when it granted the prosecution's motion to amend the three theft counts mid-trial. We are not persuaded.

### A. Standard of Review and Applicable Law

¶ 53    We review a trial court's decision to allow the amendment of the information under Crim. P. 7(e) for an abuse of discretion. People v. Palmer, 2018 COA 38, ¶ 12.

¶ 54    After a trial has begun, a court will only amend the information as to form and only "if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." Crim. P. 7(e). We construe Crim. P. 7(e) liberally. Palmer, ¶ 12. An amendment is one of form if it neither adds an additional element or a different offense nor deprives the defendant

of adequate notice of the charges. People v. Washam, 2018 CO 19,
¶ 16.

## B.    Discussion

¶ 55    We conclude, for the following reasons, that the mid-trial amendment in this case (1) was one of form because it did not add an additional element or a different offense to the charges and did not deprive defendant of adequate notice of what the charges against him were, *see id.*; and (2) did not prejudice defendant's substantial rights, *see* Crim. P. 7(e).

¶ 56    Before the prosecution rested, the court granted the prosecutor's request to amend the three theft counts to remove any victims from the respective count who had not testified or whose testimony had addressed events outside the time period for the offenses as described in the information and in the bill of particulars.

¶ 57    In other words, the amendment removed from the jury's consideration allegations concerning victims who had not testified and limited the jury's consideration to evidence that was within the scope of the information and the bill of particulars. *See People v. Manzanares*, 942 P.2d 1235, 1242 (Colo. App. 1996). So, contrary

21

to defendant's assertion, the court did not submit a different offense to the jury; he was still charged with theft.  *See Washam*, ¶ 29 (in assessing whether an amendment adds an additional or different offense, we look at whether the amendment charges the defendant under a different statutory scheme or increases the number of counts a defendant faces).

¶ 58    Defendant contends that he was prejudiced because the amendment precluded him from cross-examining witnesses.  But he does not explain how the amendment impacted his ability to do so; indeed, he had the opportunity to cross-examine every victim whose name appeared on the verdict forms.

¶ 59    Defendant asserts that the timing of the amendment was prejudicial because he would have asked the court for a judgment of acquittal but for the amendment.  He bases this assertion on *People v. Moody*, 674 P.2d 366, 369 (Colo. 1984).

¶ 60    But *Moody* is inapposite.  In that case, the prosecution moved to amend the information *after* the defendant had asked the court to grant a judgment of acquittal; in this case, the court granted the prosecution's motion before defendant would have had an opportunity to request a judgment of acquittal.  In that case, the

variance between the evidence and the allegations was material and granting a motion to amend would have prejudiced the defendant; in this case, the variance between the evidence and the allegations was not material, and the court's decision to grant the amendment did not prejudice defendant.

¶ 61 Finally, relying on *People v. Ramos*, 2017 COA 100, defendant submits that the prosecution was required to prove each individual theft alleged in each aggregated theft count to establish that he had committed the crime of theft because each individual theft served as an element of the aggregated theft counts. When the prosecution amended the information to remove some of the victims from each count, defendant's submission goes on, it did not just remove surplusage; it removed substance. The court therefore should have dismissed all the aggregated theft counts, he finishes up, because the prosecution had not proved all the elements of each count. Echoing his assertion based on *Moody*, 674 P.2d at 369, he submits that he was also prejudiced because the court allowed the prosecution to amend the aggregated theft counts after he had asked the court to dismiss them.

¶ 62    In *Ramos*, ¶ 4, a jury found that the defendant had stolen money in only one of three individual thefts making up an aggregated theft count.  The division held that, under the plain language of the aggregated theft statute, section 18-4-401(4)(a), C.R.S. 2021, the prosecution must "prove all of the thefts aggregated into a single count."  *Ramos*, ¶ 17.  This is so because, according to that statute, all thefts aggregated into a single count "shall constitute a single offense."  *Id.* at ¶ 18 (quoting § 18-4-401(4)(a)).  As a result, the division decided that the trial court had erred because it had not instructed the jury that it could only convict the defendant of the aggregated theft count if it found that she had committed all three of the individual thefts.  *Id.* at ¶ 21.

¶ 63    Comparing *Ramos* to this case, we can see that *Ramos* is distinguishable.  The error in *Ramos* concerned defects in the court's instructions and in the jury's verdict.

¶ 64    In this case, unlike in *Ramos*, the court's decision to allow the prosecution to amend the aggregated theft counts by removing some victims occurred *before* the jury deliberated and convicted defendant.  The court's instructions and verdict forms listed only the named victims in each count who remained after the court

24

granted the prosecution's motion to amend the counts. The jury found, by way of interrogatories, that defendant had stolen money from each of those remaining victims. In other words, the jury found that the prosecution had proved all the individual thefts in the aggregated counts beyond a reasonable doubt because it convicted defendant of all those individual thefts.

¶ 65     The error that the division identified in *Ramos* did not occur in this case. Because that error did not occur, defendant's assertion that he was prejudiced is unavailing. Even though the court's decision to grant the amendment modified the originally charged class 5 felony to a class 6 felony, that modification *reduced* the potential sentence that defendant faced if he was convicted. And, because class 6 felony theft was a lesser included offense of class 5 felony theft, the prosecution could have, even in the absence of the amendment, asked the court to instruct the jury on class 6 felony theft. *See People v. Garcia*, 940 P.2d 357, 358 (Colo. 1997) ("[A]n uncharged offense may be submitted to the jury over the defendant's objection if . . . the uncharged offense is a lesser included offense of the charged offense . . . .").

¶ 66    Defendant's submission treats the court's decision to allow the prosecution to amend the aggregated theft counts as equivalent to the jury's verdict in *Ramos* finding that only one of three individual thefts of an aggregated theft count had been proved.  But *Ramos* says nothing about what should happen before a jury is instructed and returns a verdict; it focuses only on instructions and verdicts. When *Ramos*, ¶ 17, holds that the prosecution must "prove all of the thefts aggregated into a single count," it means that the prosecution must prove all the aggregated thefts that are submitted to the jury.  It does not mean that the prosecution must prove all the aggregated thefts that may have, at one point, appeared in counts and then been removed before the jury was instructed, deliberated, and returned a verdict.  The bottom line is that the record shows defendant got what he claims *Ramos* required: the jury found that the prosecution had proved each individual theft that was contained in the instructions and listed on the verdict forms.

## VI.    Restitution

¶ 67    Defendant raises two challenges to the trial court's restitution order.  First, he contends that the court violated his right to be

present at the restitution hearings. Second, he submits that the court erred by ordering him to pay restitution for what he deems "uncharged, unproven, or dismissed thefts." We disagree with both contentions. (In reaching this result, we are aware that our supreme court recently decided *People v. Weeks*, 2021 CO 75, which concerned a different restitution issue. But neither party mentioned *Weeks* in the briefs, so we therefore decline to address whether it applies to this case. *See Galvan v. People*, 2020 CO 82, ¶ 45 ("[C]ourts are well-advised to 'wait for cases to come' to them and to 'decide only questions presented by the parties.'" (quoting *United States v. Sineneng-Smith*, 590 U.S. ___, ___, 140 S. Ct. 1575, 1579 (2020))).

### A. Right to be Present

#### 1. Standard of Review

¶ 68 Whether a trial court violated a defendant's constitutional right to be present at trial is reviewed de novo. *People v. Janis*, 2018 CO 89, ¶ 15. Because we conclude that the court did not err, we need not wade into the dispute between defendant and the prosecution about what the standard of reversal should be if there were an error.

## 2. Discussion

¶ 69     Defendants have a constitutional right to be present at a restitution hearing. *People v. Hernandez*, 2019 COA 111, ¶ 1. But a defendant may waive that right when the record as a whole shows the waiver was knowing, intelligent, and voluntary. *Janis*, ¶ 26.

¶ 70     In this case, there were two restitution hearings. Defendant was not present at either one.

¶ 71     At the first hearing, defense counsel said that she did not know where defendant was, but she still wished to proceed. When the court asked whether defendant had notice of the hearing, she replied, "We have had a hard time getting in contact with him since last time. There were some issues in regard to his immigration status, so I don't know. I don't know." She then said that she had made many efforts to notify him. The court allowed the hearing to proceed.

¶ 72     Defendant did not appear at the second restitution hearing, either. Upon the prosecutor's request, defense counsel made the following record:

> COURT: [D]o you have any information
> regarding [defendant], whether he knew of the
> hearing and chose not to be present and

28

> indicated to you he was not coming, or do you have something more you can tell me?
>
> DEFENSE COUNSEL: All three, Your Honor. He does know about the hearing, we had a conversation, he chose not to be present.
>
> COURT: Okay. So I think . . . under those circumstances and again, keeping in mind that he did not appear at the initial hearing, that he has chosen not to participate in this proceeding.

¶ 73    We conclude that, even if the transcript of the initial hearing does not clearly show that defendant was aware of it and that he had decided not to attend it, the record as a whole, *see id.*, nonetheless demonstrates that defendant knowingly, intelligently, and voluntarily waived his right be present at the restitution hearings. The court asked defense counsel if she had made "many efforts" to notify defendant about the first restitution hearing, and she replied, "Yes." During the trial, defendant told the court that he did not want to attend the instructions conference. And, at the second restitution hearing, which was a continuation of the first, defense counsel reported that defendant did not want to attend it.

¶ 74    A waiver is "knowing" when the "person waiving the particular right . . . 'know[s]' of the existence of the right and any other

information legally relevant to the making of an informed decision either to exercise or relinquish that right." *Id.* at ¶ 28 (quoting *People v. Mozee*, 723 P.2d 117, 121 n.4 (1986)). The record as a whole demonstrates that defendant generally understood he had a right to be present during the trial proceedings, which included the restitution hearings. *Hernandez*, ¶¶ 22-25.

¶ 75 A waiver is "intelligent" if the person waiving the right is "fully aware of what he is doing and . . . make[s] a conscious, informed choice to relinquish the known right." *Janis*, ¶ 28 (quoting *Mozee*, 723 P.2d at 121 n.4). During the second restitution hearing, defense counsel said that defendant knew about the hearing and that he had chosen not to be present.

¶ 76 Defendant's reliance on *Hernandez*, ¶ 27, for the proposition that counsel cannot waive a defendant's right to be present is misplaced. In *Hernandez*, there was no indication that the defendant knew of the restitution hearing. *Id.* Counsel's statement that he was "prepared to proceed" without the defendant's presence was insufficient to constitute a waiver. *Id.* at ¶¶ 4, 27. Unlike in *Hernandez*, defense counsel in this case spoke to defendant, who unambiguously said that he did not wish to participate.

¶ 77    Finally, a waiver is "voluntary" when the person waiving the right has "not [been] coerced by the state either physically or psychologically." *Janis*, ¶ 28 (quoting *Mozee*, 723 P.2d at 121 n.4). Defendant does not point to any evidence, nor do we see anything in the record to suggest, that the prosecution coerced defendant into waiving his right to be present at the restitution hearings.

## B.    Amount of Restitution Awarded

¶ 78    Defendant last contends that the court should not have imposed restitution for what he labels as "uncharged, unproven, or dismissed thefts." We disagree that the court did anything like this, and we conclude that the record supports the court's restitution order.

¶ 79    Defendant correctly notes that a trial court is not permitted to impose restitution for conduct for which he has been acquitted, *see Cowen v. People*, 2018 CO 96, ¶ 2, for uncharged conduct, *see People v. Sosa*, 2019 COA 182, ¶ 1, or for dismissed charges, *see People v. Roddy*, 2021 CO 74, ¶ 5. While these propositions are true as matters of law, they do not apply to this case. The restitution order was based on the theft charges; the court did not dismiss any of them, and the jury did not acquit defendant of any of

31

them.  Each of the victims who received restitution testified at trial, and the jury specifically found that defendant had committed theft as far as each of them was concerned.

¶ 80 Defendant appears to contend that the court could not impose restitution for any amount greater than what the victims testified to at trial.  But no such limitation exists because section 18-1.3-603(2)(a), C.R.S. 2021, *requires* the court to "base its order for restitution upon information presented to the court by the prosecuting attorney, who shall compile such information through victim impact statements or other means to determine the amount of restitution and the identities of the victims."  To the extent that defendant asserts that the court could not rely on the victim impact statements in crafting its restitution order, he is mistaken.  *See People in Interest of A.V.*, 2018 COA 138M, ¶ 33.

¶ 81 The judgment of conviction is affirmed, with the exception that the conviction for identity theft is vacated.  The restitution order is affirmed.  The case is remanded to the trial court to correct the mittimus accordingly.

JUDGE DUNN and JUDGE JOHNSON concur.